RICHARD YEATES, Appellee, *vs.* THE ILLINOIS CENTRAL
RAILROAD COMPANY, Appellant.

*Opinion filed June 16, 1909—Rehearing denied October 14, 1909.*

1. BRIEFS—*appellee's brief should be a reply to points made by
appellant.* Under the rules of the Supreme Court the brief and
argument for the appellee should be a reply to the points made by
the appellant and the argument should follow the order of their
presentation, so that the court may get the points made by the ap-
pellant, with the answers thereto, in intelligible form.

2. MASTER AND SERVANT—*duty of master to make rules—effect
of an established custom.* It is the duty of a master conducting a
business with different branches to make, publish and enforce rea-
sonable rules and regulations to promote the safety of servants,
but in the absence of any rule governing a particular situation it
is proper to consider the existence of an established custom with
respect thereto.

3. SAME—*when relation of master and servant exists.* The re-
lation of master and servant exists where the employer has the
power to direct what work the employee shall do and the manner
in which it shall be done and has the power to remove and dis-
charge him.

4. SAME—*when switch tender hired by one railroad company
is not servant of another.* A switch tender who is employed and
controlled by one railroad company is not the servant of another
company for whose trains he throws the switch under a trackage
arrangement between the two companies, where the latter company
has no control over him other than to complain to his employer of
the manner in which he performs his duties, although it re-imburses
his employer for a fixed part of his wages.

5. NEGLIGENCE—*person is bound to anticipate results naturally
following his acts.* A switch tender who violates an established
custom by letting a switch engine of another railroad company in
upon a certain switch track without waiting for a road engine to
back out or warning the switch crew of its presence, is bound to
anticipate, as a natural result of his act, that the switch engine
will proceed up the track, and if a collision between the switch
engine and the road engine occurs as the proximate result of his
negligence, his employer is liable to the injured members of the
switch crew.

6. SAME—*what is proximate cause of an accident.* The near-
est independent cause which is adequate to produce and does bring

about an accident is the proximate cause of the same and supersedes any remote cause.

7. SAME—*what tends to show negligence by a switch tender.* The violation of a practically uniform custom by a switch tender by which a switch crew were misled and in consequence of which they encountered a danger they had no reason to expect, tends to prove negligence on his part.

8. SAME—*fact that injury is partly due to negligence of fellow-servant does not preclude recovery.* If an injury to a switchman is wholly due to the negligence of members of the crew who are his fellow-servants he has no cause of action against anyone; but if the negligence of a person not his fellow-servant is the proximate cause of the injury, the fact that the negligence of his fellow-servants concurred with such person's negligence in producing the injury does not preclude a right of recovery.

9. INSTRUCTIONS—*when instruction need not state meaning of fellow-servants.* An instruction stating that if the jury believe, from the evidence, that a certain switch tender was the servant of the defendant railroad company and was not under the direction and control of another railroad company, and that the plaintiff was the servant of the latter company and not under the direction or control of the defendant, then the plaintiff and the switch tender were not fellow-servants, is not erroneous in failing to further inform the jury of the meaning of fellow-servants, in the law.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

CALHOUN, LYFORD & SHEEAN, (JOHN G. DRENNAN, of counsel,) for appellant.

JAMES C. McSHANE, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is an appeal from a judgment of the Branch Appellate Court for the First District affirming a judgment of the circuit court of Cook county for $22,500 in favor of appellee and against appellant on account of injuries re-

ceived in a collision between a switch engine of the Michigan Central Railroad Company, upon which the appellee, a member of the switch crew, was riding, and a road engine of the same company, necessitating the amputation of both of appellee's legs above the knees.

A brief for appellant was filed presenting three grounds relied upon for a reversal of the judgment: First, that the trial court erred in refusing to direct a verdict of not guilty; second, that the court erred in refusing to set aside the verdict, because it showed that the jury did not consider a covenant not to sue the Michigan Central Railroad Company; and third, that the court erred in giving to the jury instructions numbered 4 and 6 at the request of appellee. This brief was followed by an argument discussing and elaborating the points contained in the brief, and both were in accordance with the rule of this court. That rule required the appellee to file a brief containing a short and clear statement of the propositions by which counsel sought to meet the alleged errors and sustain the judgment, which brief might be followed by an argument confined to discussion and elaboration of the points contained in the brief. Instead of complying with the rule, counsel for appellee filed what is called a statement, brief and argument, giving no attention to the questions raised or the errors alleged or the order of their presentation, but constituting a sort of treatise on the facts and law applicable to this and similar cases and presenting the views of counsel on every subject that might have been involved in the appeal. It is needless to say that the rule should be complied with and the brief and argument for appellee should be a reply to the points made for the appellant, and the argument should follow the order of their presentation, so that the court may get the points made by the appellant, with the answers thereto, in some intelligible form.

The amended declaration contained seven counts, but on the trial the jury were instructed to disregard the third,

fifth, sixth and seventh and the cause was submitted on the first, second and fourth.

The ground upon which the defendant was charged with liability was that a switch tender in its employ threw a switch and signaled and permitted a train drawn by the switch engine on which plaintiff was riding to run north upon a track at a time when said switch tender knew, or by the exercise of ordinary care would have known, that the road engine was liable to be backing south.

The facts not in dispute at the trial are as follows: From Kensington, south of Chicago, the trains of the Michigan Central Railroad Company come into the city over the defendant's tracks to Harrison street. At that point there is a diamond switch, operated by a switch tender employed and paid by the defendant, but the defendant is reimbursed to the extent of one-third of his wages by the Michigan Central Railroad Company. The switch tender throws the switches and controls the movements of trains passing that point. The switch leads to two tracks, numbered 5 and 6, running north to about Adams street, which the Michigan Central Railroad Company holds under a perpetual lease. From Adams street the yards of the Michigan Central Railroad Company extend north to South Water street and are owned by that company in fee. No. 5 is the west track, and the usual method is for a train coming in from the road to be let in by the switch tender on track No. 5. After the train has pulled in so as to clear track No. 6, the engine is detached and crosses over to track No. 6 (the east track) and backs south to the round-house, at Sixteenth street. A switch engine then comes south from the yards on No. 6 and pushes the train up into the yards. On the morning of December 12, 1903, at about 8:30, a Michigan Central freight train came from the south to the diamond switch and was let in by the switch tender on track No. 5. The train stopped and the brakeman uncoupled the engine, according to the custom, and the engine passed over to

track No. 6 and started to back south on its way to the round-house. Just after the freight train had pulled in on track No. 5 the switch engine, on which the plaintiff was the forward switchman, came north and stopped south of the switch, drawing seven or eight cars. There was a heavy snow falling, which prevented seeing any object at a distance. When a train went north on track No. 6 it was the practice to proceed carefully, with the engine and train under full control, as switch engines might be expected at any time coming south on that track, but it had been a regular custom for the switch tender to hold out all engines and trains until the road engines that had hauled trains in had uncoupled from their trains and backed south over track No. 6 on the way to the round-house, which was ordinarily not more than five minutes. The only exception was in case the road engine was delayed at the north end of the yards for a considerable time, which occasionally happened, when the switch tender would allow engines or trains to go north upon track No. 6 after first informing their crews that the road engine was still up in the yards. None of the switch train crew at this time knew that the freight train had pulled in on track No. 5, and after waiting a few minutes for a signal the switch tender signaled the train to come ahead and threw the switch. The switch crew did not know what track they were to take, but when they turned the curve into track No. 6 they saw that there was a freight train standing on track No. 5, but they did not know that the road engine had not come out. The switch engine proceeded slowly north, with the bell ringing and with a lookout for switch engines which might be coming south on the track. It was impossible to see any distance, and when the switch engine reached the Jackson street viaduct there was also a great deal of smoke and steam from one of the defendant's switch engines standing there. The road engine was backing, without the bell ringing, at a rate estimated from six to twelve miles an hour

and the crews could not see each other more than a car length, so that a collision occurred and the plaintiff lost both of his legs. There was a dispute at the trial between the switch tender and the members of the switch crew in this: The switch tender testified that when the engine was passing he shouted to them, "Go up No. 6; I am letting you up the wrong main; go up there easy;" but the members of the switch crew denied that they heard anything of the kind.

The grounds upon which it is argued the court ought to have directed a verdict are, that the switch crew knew that they might meet a switch engine at any time, and when they saw the freight train standing on track No. 5 they also knew that they might meet the road engine; that if the act of the switch tender was negligent it was not the proximate cause of the accident, for the reason that the switch crew were aware of probable danger and proceeded slowly and cautiously for two blocks in anticipation that they might meet an engine; that negligence of the switch crew, after they found the freight train on track No. 5, without flagging ahead or being prepared to at once back up, broke the connection between the switch tender's act and the collision, and that negligence on the part of the road engineer was the cause of the accident and was an independent, intervening, efficient cause of the plaintiff's injury. The evidence was, that there was a uniform custom on the part of the switch tender to hold out engines going north and not let them go upon the track until the road engine had come out; but it is insisted that the custom was not binding on the defendant because it was not the result of any rule promulgated by it, and when the switch crew saw the train on track No. 5 they were bound to anticipate a probable meeting with the road engine. It is the duty of a master conducting a business with different branches, to make, publish and enforce reasonable rules and regulations to promote the safety of servants, and no

rule was ever made or published by the defendant governing the movement of trains at this switch. There was no rule of the defendant on the subject, but in considering the question whether the act of the switch tender was negligent and whether the switch crew ought to have anticipated meeting the road·engine it was proper to consider the existence of the custom. (*St. Louis Nat. Stock Yards* v. *Godfrey,* 198 Ill. 288; *Chicago, Rock Island and Pacific Railway Co.* v. *Rathneau,* 225 id. 278.) The violation of a practically uniform custom tended to prove negligence on the part of the switch tender, by which the switch crew were misled and in consequence of which they encountered the danger which they had no reason to expect. Crews of switch engines proceeded cautiously in view of the possibility of meeting, but there was evidence tending to show that road engines had the right of way and did not look out for switch engines. It was necessary to prove that the negligence charged was the proximate cause of the injury, and the nearest independent cause which is adequate to produce and does bring about an accident is the proximate cause of the same and supersedes any remote cause. (*Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242; *Seymour* v. *Union Stock Yards Co.* 224 id. 579.) The court could not say that any negligence of the switch crew or the engineer of the road engine broke the connection between the switch tender's act and the collision, if there was any negligence on the part of either crew or engineer. Every one is bound to anticipate the results naturally following his own acts, and the fact of the switch crew going north on track No. 6 was a consequence of the wrongful act of the switch tender which he necessarily anticipated. The injury was not disconnected from the primary cause by some other independent and efficient cause, and even if the engineer of the road engine or the switch crew were guilty of negligence it would not relieve the defendant from liability. If the switch tender was free from negligence there would, of

course, be no liability of the defendant, as it was not responsible for any negligence of servants of the Michigan Central Railroad Company. The court could not say, as a matter of law, that the switch tender was not negligent or that his negligence was not the proximate cause of the injury, and therefore the court did not err in refusing to direct a verdict.

It is next contended that the court erred in refusing to set aside the verdict, because it showed that the jury did not consider the covenant not to sue the Michigan Central Railroad Company which was introduced in evidence. It is not contended that the covenant not to sue one joint tort feasor would prevent an action against the other, although that question is argued on the other side as though it was a matter to be decided, but the point made is, that the covenant included the defendant because either it or the switch tender was an employee of the Michigan Central Railroad Company for the purpose of operating the switch. Neither the defendant nor the switch tender was a servant of the Michigan Central Railroad Company. The relation of master and servant exists where the employer has the power to direct what work the employee shall do and the way and manner in which it shall be done and has power to remove and discharge him. (*Grace & Hyde Co.* v. *Probst,* 208 Ill. 147; 20 Am. & Eng. Ency. of Law,—2d ed.—12; 26 Cyc. 963; Wood on Master and Servant, sec. 1.) The switch tender was employed by and was under the control of the defendant, and the only thing the Michigan Central Railroad Company could do would be to make complaint to the defendant of the manner in which he discharged his duties, or to insist that the defendant, through its servant, should perform them differently.

The fourth instruction given at the request of plaintiff was as follows:

"The court instructs the jury that even if you believe, from the evidence, that the engineer or fireman of the

switch engine or the conductor of the switching crew in question were guilty of negligence which contributed towards or helped to cause the collision in question, still if you further believe, from the evidence, that the plaintiff did not in any way induce, cause or contribute to such negligence, if any, upon the part of the said engineer, fireman or conductor, then such negligence, if any, upon the part of said engineer, fireman or conductor cannot be charged against or imputed to the plaintiff in this suit, provided the plaintiff was himself, before and at the time of the collision in question, exercising ordinary care for his own safety."

This instruction, as applied to this case, was incorrect, and standing alone would have been misleading. The negligence of a driver of a vehicle not under the control of the person injured is not to be imputed to him. (*Chicago Union Traction Co.* v. *Leach,* 215 Ill. 184.) But that rule of law had nothing to do with this case. So far as the switch crew were concerned they were fellow-servants of the plaintiff, for whose negligence he would have no cause of action against anyone. If the defendant was guilty of negligence which was a proximate cause of the collision, the fact that negligence of the plaintiff's fellow-servants of the switch crew or of the engineer of the road engine concurred with the negligence of the defendant would not excuse it and would make no difference. (*Monmouth Mining and Manf. Co.* v. *Erling,* 148 Ill. 521; *Chicago and Northwestern Railway Co.* v. *Gillison,* 173 id. 264; *Pullman Palace Car Co.* v. *Laack, supra.*) The instruction was not applicable to the case. If the defendant was not guilty of negligence and the switch crew or road engineer were guilty of negligence causing the collision the plaintiff could not recover in any event. The instructions, however, are all to be regarded as a single charge and to be read together, and we do not think that the jury were misled by instruction No. 4. The second instruction given for the plaintiff advised the jury that he could not recover

on account of any negligence of the Michigan Central Railroad Company's servants in charge of the operation or management of the road engine, or of its servants in charge of the operation or management of the switch engine, or on account of any negligence on the part of said railroad company. The defendant's instruction N informed the jury that if they believed, from the evidence, that the only direct and proximate cause of the injury was negligence upon the part of employees of the Michigan Central Railroad Company they should find the defendant not guilty, and instruction O stated that if the engineer of the switch crew was guilty of negligence in the manner in which he proceeded along track No. 6 under the conditions which then obstructed his view ahead, and that such negligence was the only direct and proximate cause of the collision, they should find the defendant not guilty. These instructions were correct and accurate statements of the law, and we do not see how the jury could have applied instruction No. 4 to the injury of the defendant.

Instruction No. 6 concerned the relations of the switch tender to defendant, and stated that if the jury believed, from the evidence, that he was the servant of the defendant and was not under the direction or control of the Michigan Central Railroad Company, and if the plaintiff was the servant of the Michigan Central Railroad Company and was not under the direction and control of the defendant, then the plaintiff and the switch tender were not fellow-servants. It is not contended that the instruction was an incorrect statement of the law, but the objection is that it was given without informing the jury of the meaning of fellow-servants in the law,—in other words, that a statement of what servants were not fellow-servants would not be good without a further statement as to what servants would be fellow-servants. If the defense rested upon the fact that certain persons were fellow-servants of the plaintiff, the defendant had the privilege of asking an instruc-

tion bringing such persons within the rule, and that was practically done by instruction L, given at the request of the defendant, which, without using the term, stated the legal effect. The court did not err in failing to include in instruction No. 6 a statement what would constitute fellow-servants.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*