DARDANELLE & RUSSELLVILLE RAILWAY COMPANY *v.* BRIGHAM.

Opinion delivered February 27, 1911.

1. MASTER AND SERVANT—DEATH OF SERVANT—INSTRUCTION.—In a suit to recover damages for the killing of a fireman on defendant's engine in collision with the train of another railway company it was error to instruct the jury upon the theory that defendant was liable if its engine was wrongfully upon the other's track where there was no evidence to that effect. (Page 177.)

2. SAME—LIABILITY FOR NEGLIGENCE OF FELLOW SERVANT.—Evidence tending to prove that defendant's engineer discovered the approach of the train of another railway company in time to avoid the collision in which the plaintiff's intestate was killed, or in time to warn intestate so that he could escape, will support a finding that defendant was negligent. (Page 178.)

3. SAME—LIABILITY OF MASTER FOR ACTS OF STRANGER.—In an action against a railway company for the negligent killing of plaintiff's intestate in collision with the train of another railway company using a joint track, defendant's liability depends upon the negligence of its own servants and not upon the negligence of the other company. (Page 178.)

4. JOINT TORT—EFFECT OF RELEASE OF ONE TORTFEASOR.—A covenant not to sue one of two joint tortfeasors does not release the other from liability. *Texarkana Telephone Co.* v. *Pemberton,* 86 Ark. 329, followed. (Page 178.)

Appeal from Pope Circuit Court; *Hugh Basham,* Judge; reversed.

*J. W. & M. House* and *J. W. House, Jr.,* for appellant.

1. The proof does not show any negligence on the part of the defendant company. Under the rules and under the law as imposed by statute, each company was required to keep its trains under control while within the yard limits, and to keep a constant lookout. Appellant had the right to assume that these rules and statutes would be obeyed by the other company, and that the engineer of the local freight would observe the rules imposed upon him. There was therefore no reason why appellant should have expected a collision under the circumstances and conditions under which it did occur; and negligence on the part of appellant will not be presumed.

2. If it be conceded that appellant was guilty of negligence, such negligence was not the proximate cause of the accident. In order to be a proximate cause, it must be an independent cause, which is adequate to and does bring about an accident or injury. It supersedes any remote cause. 57 Am. & Eng. Ry. Cases (N. S.) 71.

Where a responsible agent intervenes between the original negligence and the injury, the line of causation is thereby cut off, and the originally negligent party is relieved from liability. Hence, even if appellant was negligent, the conduct of the engineer of the St. Louis, Iron Mountain & Southern Railway Company was an independent act which produced the injury and became the proximate cause thereof, relieving appellant from liability. 49 Am. St. Rep. 199; 27 *Id.* 753; 23 *Id.* 220; 117 Mass. 533; 24 R. I. 292; 96 Am. St. Rep. 713; 66 Ark. 68, 70; 92 Ark. 138; 39 Am. St. Rep. 251; 124 S. W. 543; 83 Ill. 56.

3. If it be conceded that appellant was a joint tort feasor with the St. Louis, Iron Mountain & Southern Railway Company, the settlement between appellee and the latter company on June 21, 1909, constituted a complete bar to this action. 73 Ark. 14; 15 Am. Dec. 536; 32 N. E. 273; 41 Am. Dec. 371; 17 Atl. 338; 36 Am. Rep. 833; 37 Cal. 216; 136 Mich. 175; 8 Bacon's Abridgment, Bouvier's Ed., tit. "Release," p. 227; 34 Vt. 390; 20 Ia. 317; 113 Cal. 426; 28 Wash. 428; 92 Am. St. Rep. 864 and note at p. 872; 4 Pac. 1165, 1167; Cooley on Torts 139; 15 Am. Dec. 536.

4. The foregoing authorities are applicable in all cases

where two or more parties are guilty of a tort whether they joined in the commission of the tort or not.   But the elements are wanting that would constitute the two companies joint tort feasors.   In order to constitute this relation, two or more parties guilty of a tort must have acted in concert for a common purpose and common end; but here the parties were acting independently. Hence, under these conditions, when the person injured makes a settlement or compromise with the party who was the active moving cause of the injury, the other tort feasor is discharged. 126 N. C. 701; 78 Am. St. Rep. 677; 59 S. W. 920; Cooley on Torts 166-168; 30 Am. St. Rep. 685; 5 Am. Rep. 368; 40 *Id.* 430; 57 Am. St. Rep. 713.

*J. T. Bullock* and *R. B. Wilson,* for appellee.

1.   Authorities cited by appellant in support of the contention that the proof fails to show any negligence on its part would be applicable to issues which might arise if this were a suit between it and the other company.   But that is not the issue here.   The question is, did the master discharge its duty to the servant under the circumstances of this case?   If it did not, it should respond in damages, and it is no defense to appellant that some one else was also negligent.   Smith's Whittaker on Negligence, 38, and authorities cited; 29 Cyc. 496; *Id.* 498; 61 Ark. 381; 129 Am. St. Rep. 663; 84 *Id.* 295.

2.   The agreement entered into by appellee with the St. Louis, Iron Mountain & Southern Railway Company was not a settlement and satisfaction of her claim for damages against appellant.   It is not claimed that appellee was paid in full nor that she gave indemnity to the former company from further liability; but, on the contrary, she expressly reserved in the contract the right to proceed against both companies.   2 Ark. 57; *Id.* 222-3; 4 Ark. 203, 207; 70 Ark. 197; 12 Ark. 164; 7 Ark. 332; 45 Ark. 290; 1 Parsons on Cont. 23, 162; 1 Wharton on Cont. § 1037; 1 Lindley, Part. 433; Addison on Cont. 107; 34 Me. 296; 29 Ia. 448; 86 Ark. 329; 88 Ark. 473; 129 Fed. 203, 63 C. C. A. 361; 122 N. W. 499; 83 S. W. 258; 93 S. W. 166; 173 N. Y. 455, 66 N. E. 133; 98 Pac. (Kan.) 784.

This is a case of concurrent negligence, resulting in the injury and death of appellant's intestate.   The act of one of

these joint contributors to the accident was the act of both, and they are jointly and severally liable for resulting injuries. As to the appellant, the acts of its engineer were the acts of a vice principal, or master. 87 Ark. 587; 89 Ark. 522. And deceased did not assume the risk of negligence on the part of the master. 90 Ark. 223; 34 Am. St. Rep. (Ill.) 52. In order to render a party liable for injury resulting from negligence, it is sufficient if that party's negligence, concurring with one or more efficient causes other than the injured party's fault, is the proximate cause of the injury. 73 Ark. 116; 106 U. S. 700; 36 Am. St. Rep. 655 and note. Neither did he assume the risk of injury from the negligence of the other company. 38 N. Y. 260; 64 N. Y. 138; 39 Minn. 328; 78 Cal. 454; 73 Ark. 116.

*J. W. House* and *J. W. House, Jr.,* in reply for appellant.

1. It is well settled that an "accord and satisfaction" may be had upon the payment of any sum agreed upon, or upon the execution of an agreement to pay a sum agreed upon, as was done in this case. 114 S. W. 451; 31 Am. Rep. 47. See also 72 Pac. 875; 62 L. R. A. 760; 24 Conn. 613, 621; 6 Wend. (N. Y.) 390-391; 66 N. W. 606-614; 53 Pac. 229; 11 Col. App. 384; 13 Pac. 198-201; 65 Mo. App. 55-59; 53 Pac. 229; 71 Pac. 885; 11 N. Y. App. Div. 93-96.

Where, in the discharge of one joint tort feasor, it is stipulated that his release shall not discharge the other or others, the weight of authority is that such a release discharges all the tort feasors, notwithstanding the stipulation to the contrary. 45 Md. 60; 25 Hun 543; 35 Hun 94; 66 N. Y. Supp. 1066; 72 *Id.* 1084; 2 Ohio 89; 2 Hen. & M. (Va.) 38; 92 Am. St. Rep. 872, 876, note, 864; 32 Fed. 338; 150 Fed. 559; 125 Pa. St. 397; 66 Cal. 163.

2. Where the servant has equal opportunity as the master to know the character of the services he is to perform, and undertakes to perform the same, he assumes the risk in the performance thereof. 139 N. Y. 369; 12 S. W. 172; 110 Wis. 307. And where the servant's means of knowledge, or opportunity to know, is equal to the master's, he assumes the risk. 1 Labatt, M. & S. § 404; 29 Conn. 548; 71 Hun 127; 59 N. W. 217; 68 Fed. 630.

McCulloch, C. J. Appellee's intestate, J. L. Brigham, while working for appellant as a locomotive fireman, was killed in

a collision of his engine with one of the St. Louis, Iron Mountain & Southern Railway Company on the main line of the latter's track at Russellville, Ark. Appellant operates a short line of railroad between Russellville, a station on the St. Louis, Iron Mountain & Southern Railway, and Dardanelle. Its railroad is connected with the Iron Mountain line with a "Y" a short distance east of the station at Russellville. The west leg of the "Y" runs parallel with the main line of the Iron Mountain for some distance in the direction of the station, and connects with the main line of that road about 1,200 feet east of the station. All of the side tracks and switches there are owned by the St. Louis, Iron Mountain & Southern Railway Company, and constitute a part of its yardage. One is a house track, which runs off from the south side of the main line from a point between the depot and appellant's connection with the main line to the freight house. The other side tracks are on the north side of the main line of the Iron Mountain road, the first one being a passing track, and three others known in their order as Nos. 1, 2 and 3. There is a connecting switch between the main track and the passing track a short distance west of the station, and the only other connection with the main track and the other tracks on the north side thereof is about a half-mile east of the station. The result of this is that, in switching cars from the track of appellant's road to the side tracks on the north side of the Iron Mountain main line track, or *vice versa,* it is necessary to travel along the Iron Mountain main track a distance of something like a fourth of a mile. Appellant's road has no connection except with the St. Louis, Iron Mountain & Southern, and necessarily receives all of its through freight from that road.

On May 2, 1904, the two companies (appellant and the St. Louis, Iron Mountain & Southern Railway Company) entered into a written contract covering traffic arrangements between them, in consideration of certain mutual undertakings and the payment by appellant to the other company of a monthly rental of $35 whereby appellant was required to do the switching and was allowed to use the tracks and station of the other company. Two clauses of the contract which are material read as follows:

"5. The parties of the first part hereby grant to the party of the second part the right to connect the west leg of the "Y"

at Russellville with the track of the said parties of the first part at the point indicated by the letter G on the blue print map hereto attached, and to operate its trains and cars with its own motive power over, along and upon the track of said parties of the first part, between the point indicated by the letters G and E upon the blue print map hereto attached, and over and along and upon the track proposed to be constructed by the party of the second part between the points indicated by the letters E and F upon said blue print map, as hereinbefore provided; but the party of the second part shall only operate its trains, engines and cars upon the right of way of the parties of the first part under the direction and supervision of the proper officer of said parties of the first part, and in such manner as not to interfere with the business of said parties of the first part, or either of them.

"6.   The parties of the first part further grant said party of the second part the right to joint use of station facilities at Russellville, Arkansas, and said parties of the first part will, through their servants and agents at the station at Russellville, attend to the business of the party of the second part at that point, including telephone service, but, while so attending to the business of the party of the second part, such servants and agents shall be considered to be the sole servants and agents of said party of the second part; but it is expressly understood and agreed that the party of the second part shall perform all switching service between the Dardanelle & Russellville Railway Company and the Little Rock & Fort Smith Railway free of charge, and that the parties of the first part shall have free use of the "Y" at Russellville, but in such manner as not to interfere with the business of the second party."

Appellant had been allowed the use of the tracks under a similar contract for a number of years before the occasion in question, making in all about fifteen years that the tracks had been so used.   The train with which Brigham's engine collided was a local freight train, which reached Russellville from the west somewhere about noon or shortly thereafter.   The collision occurred at 2:15 P. M. on January 12, 1909.   Appellant's engine, with Brigham as fireman and Charles Shuttle as engineer, was switching at the time, and it became necessary to go over on one of the tracks north of the main line after four cars to weigh them.

After getting these cars, the engine was run down to the west end of the yards to get a couple of coal cars on the passing track, and after getting them it was backed down to the east end of the yards. About this time the engine of the local freight train, which was then at the station headed towards the east, came down the main track near the end of the passing track to drop a car where appellant's engine was then standing waiting on the passing track. After dropping the car, the Iron Mountain engine backed down the main line toward the station, and appellant's engine backed out on to the main track and headed down the track following the other engine, the two facing each other. In doing this appellant's engine was making its way to the connecting switch of its line with the main track of the Iron Mountain. It passed this switch far enough for it to be opened, and the brakeman dropped off to open the switch. About this time the Iron Mountain engine, having been connected with the train which had been left standing near the station, gave a start signal of two blasts of the whistle and started down the track toward appellant's engine, which was then backing through the switch on to its own line. Shuttle, the engineer, testified that he thought the other engine was coming down the track for the purpose of backing in on the house track, and that, as soon as it approached close enough for him to decide that it was not coming for that purpose, he blew a stop whistle, to which no attention was paid, and that he blew a second time. The Iron Mountain train came on, and collided with the appellant's engine, and Brigham's death resulted therefrom.

Appellee first instituted an action against the Iron Mountain to recover the damages sustained, alleging that the collision was caused by the negligent act of the engineer of that company. The complaint alleged that Shuttle, by a blast from his engine whistle, signalled the local freight train to stop, but that the servants in charge of the local freight train refused to give any heed to the said signal, and that the same was repeated, and that again the servants in charge of the local freight train refused to recognize or in any way give heed to said signal; and that, while appellant's train was backing on to its track, and before it could get its train completely on its track and re-throw the switch, the engineer in charge of the local freight train negligently, recklessly, wantonly,

wilfully and without any regard for the safety of persons or property on either of said trains ran the local freight train on to and collided with appellant's train. On motion of defendant, appellant was made a party defendant, and appellee, after appellant was made a party, amended her complaint by alleging that the collision occurred by reason of the concurring negligence of the engineer and conductor of appellant's train with the trainmen of the other defendant, the St. Louis, Iron Mountain & Southern Railway Company.

Subsequently, the latter company entered into a written contract with appellee whereby it conceded its negligence in the particular named, and its liability for the damage, and agreed, in substance, that if appellee would prosecute her suit solely against appellant and dismiss the action against the Iron Mountain company, and that if appellee failed to recover damages from appellant, the other company would within thirty days from the final result of the trial of the cause pay to appellee the sum of $7,500 and the costs of the action; and that in the event of a recovery from appellant of less than $10,000, said company would pay to appellee a sum sufficient to amount in the aggregate to $10,000. It was further agreed in the contract that the Iron Mountain company should at once pay to appellee the sum of one thousand dollars, which was to be credited on the total amount to be paid under the contract, should there be any further liability thereon. Thereupon, the action against the Iron Mountain was dismissed by appellee, and the action was prosecuted alone against appellant. The trial resulted in a verdict against appellant, the damages being assessed at $10,000; and the court ordered the one thousand dollars paid by the Iron Mountain company to be credited thereon.

Appellant, in addition to denying the allegations of negligence on the part of its servants, pleaded the contract between appellee and the Iron Mountain company as a satisfaction of the claim for damages. The court submitted the case to the jury on instructions requested by appellee to the effect that if appellant's engine was on the main track of the Iron Mountain in violation of the rules of that company, or in violation of the contract between the two companies, appellant would be liable for the injury, even if the servants of the other company were

negligent in running the engine into appellant's engine. We think these instructions were erroneous, and that the case should not have been submitted to the jury on that theory. It is conceded that the servants of the Iron Mountain were guilty of negligence which caused the injury, and that that company is liable for the damages. It is clear that, according to the undisputed evidence in the case, even that of the engineer of the Iron Mountain engine, that company is responsible for the injury.

It is true that the contract between the two companies specified that appellant, in doing the switching in the yards, must do so "in such manner as not to interfere with the business" of the other company. There is also a rule of the Iron Mountain company which made appellant's train an inferior one, in the sense that it was the duty of the trainmen to keep out of the way of superior trains. Whatever may be construed to be the effect of the contract and the rule referred to, the undisputed evidence in the case shows that appellant had been permitted to do switching in the yards and over the main line of the other road for fifteen years precisely in the manner in which it was being done at the time this collision occurred. The witnesses all state, without contradiction, that the local freight train of the Iron Mountain road frequently remained at the station and in the yards several hours, and that it was an unbroken custom for appellant's train to continue its switching during that time, using the main track for that purpose. The only duty recognized was that it should get out of the way of the Iron Mountain trains when necessary.

In doing the switching in accordance with the unbroken custom of many years standing, appellant's trainmen were not guilty of negligence merely in going in on the main track. If, in the discharge of their duty while on that track, they failed to keep out of the way of the Iron Mountain trains, then they are chargeable with negligence, but not merely on account of being on the track where, according to custom, they had the right to be. The Iron Mountain trainmen were bound to have known that appellant's engine was on the main track, for the switching was being done at the time that the Iron Mountain engine was backed down the main line for the purpose of coupling on to the train, appellant's engine following it down the track and stopping only a few hundred yards in front of it and in full view. We say,

therefore, that there was no negligence in being on the main track under those circumstances, and the court was in error in submitting this to the jury as an act of concurring negligence. For this error the judgment must be reversed.

The only theory upon which the appellee could recover damages of appellant is the one that the engineer, Shuttle, was guilty of negligence in failing to give a stop signal as soon as the Iron Mountain engine started down the track towards him. The fireman was at that time, according to some of the testimony, at work shoveling coal and did not see the approaching engine. The duty, therefore, of avoiding the injury devolved entirely upon the engineer; and if he discovered the approaching engine in time to have avoided a collision, or in time to have warned the fireman so that he could escape before the collision, and failed in his duty, then appellant is responsible for his negligence in that respect. It appears from the great preponderance of the evidence that, as soon as the engineer realized that the other engine was not coming to the house track, he gave a stop signal and did all that he could reasonably do to avoid a collision. Still, the evidence shows that when the Iron Mountain engine started it gave a start signal, which meant that it was about to resume its journey, and there was room to find that appellant's engineer should have taken cognizance of the fact that there was danger of a collision, and that the trainmen on the other engine were unconscious of his presence, and should have given a stop signal earlier than he did. The evidence tends to show that the engineer on the Iron Mountain engine was reading his orders and did not look to see the other engine ahead of him. If this be true, an earlier signal might have attracted his attention—at least, the jury might have so found.

It is contended that, on account of the joint use of the track by the two companies under the aforesaid contract, each is liable for damage caused by negligence of the other. We hold that appellant, when its own servants were free from any charge of negligence, is not liable for damage caused by negligence of the other company. *St. Louis S. W. Ry. Co.* v. *Heintz*, 82 Ark. 459. It may be different where a passenger is injured.

Learned counsel for appellant insist with much earnestness that the effect of the contract entered into by appellee with the

Iron Mountain road was a satisfaction of the claim for damages, even conceding that appellant and the other company were jointly liable; and that the contract operated as a release of appellant from liability. We deem it proper to dispose of that question in view of another trial. The contract was, as we construe it, merely a covenant not to sue the other company, and did not operate as a satisfaction of the claim. *Texarkana Telephone Co. v. Pemberton*, 86 Ark. 329. Counsel cite many cases bearing on this question, but, without reviewing them, we entertain no doubt that such is the effect of the contract, and appellant can claim nothing under it.

For the error in instructing the jury as heretofore indicated, the judgment is reversed, and the cause is remanded for a new trial.