NASHVILLE INTERURBAN RY. *et al. v.* ROBERT GREGORY.

*(Nashville.* December Term, 1916.)

**1. ELECTRICITY. Injuries from use. Actions. Negligence. Question for jury.**

While it cannot be said, as a matter of law, that it is the duty of a trolley company to erect guard wires between its wires and telephone wires crossing above them, the existence of such duty may, if the proof warrants, be submitted to the jury. (*Post, pp.* 422, 423.)

Cases cited and approved: Heidt v. Southern Telephone, etc., Co., 122 Ga., 474; Stark v. Lancaster Electric, etc., Co., 218 Pa., 576; Pressley v. Bloomington, etc., Co., 271 Ill., 622; Electric Railway Co., v. Shelton, 89 Tenn., 423.

**2. ELECTRICITY. Injuries from use. Negligence. Res ipsa loquitur.**

Negligence on the part of a trolley company may be inferred from the fact that a guide wire or trolley wire dangerously charged with electricity falls on or near a public street. (*Post, pp.* 423, 424.)

Cases cited and approved: Chattanooga Electric Ry. Co. v. Mingle, 103 Tenn., 667; Street Ry. Co. v. Kartwright, 110 Tenn., 277; Saulman v. Nashville, 131 Tenn., 427.

**3. ELECTRICITY. Injuries from use. Degree of care required.**

A trolley company is charged with the highest degree of care in the construction, maintenance, and operation of its wires, and that degree of care must be exercised with reference to the supervision of its wires. (*Post, p.* 424.)

**4. ELECTRICITY. Injuries from use. Company liable.**

It is the duty of a trolley company, as well as of the telephone company, to take steps to have telephone wires crossing above the trolley wires inspected and kept safe, since it is negligence for a trolley company to maintain its wires highly charged with electricity under wires known to be defective, or to rest unmindful of the state of the overhead wires. (*Post, pp.* 424, 425.)

Nashville Interurban Ry. Co. v. Gregory.

5. **ELECTRICITY. Injuries from use. Res ipsa loquitur.**

Where a telephone wire broke and fell across a trolley wire underneath, thereby becoming highly charged, and injuring a boy who came in contact therewith, the accident was one which would not have happened if either the telephone company or the trolley company had used the high degree of care required of it, and the doctrine of *res ipsa loquitur* applied to both companies, so as to warrant the jury in inferring negligence in the absence of a showing of due care. (*Post, pp.* 425-427.)

Cases cited and approved: De Glopper v. Railway & Light Co., 123 Tenn., 633; Memphis St. Ry. Co. v. Cavell, 135 Tenn., 463; Gill v. Brown, 130 Tenn., 178.

6. **ELECTRICITY. Injuries from use. Res ipsa loquitur. Rebuttal.**

That inference of negligence is not overcome by proof that a trolley company carefully constructed and operated its own lines without proof of supervision or inspection of the telephone wires strung above its wires. (*Post, pp.* 427, 428.)

Cases cited and approved: East Tennessee Coal Co. v. Daniel, 100 Tenn., 65; Railway v. Lindamood, 111 Tenn., 457.

7. **NEGLIGENCE. Pleading. Specific acts. Res ipsa loquitur.**

Where *res ipsa loquitur* is applicable, plaintiff need not allege specific acts of negligence, and if he allges both specific and general negligence, the specific allegations can be disregarded as surplusage. (*Post, pp.* 428, 429.)

Cases cited and approved: Turnpike v. Yates, 108 Tenn., 429; Wash. Va. Ry. v. Bouknight, 113 Va., 696; McNamara v. Boston, etc., R. Co., 202 Mass., 497; Walters v. Seattle, etc., R. Co., 48 Wash., 233.

8. **RELEASE. Joint tort-feasors. Covenant not to sue. Effect.**

A covenant by an injured person not to sue one of two joint tort-feasors does not affect the liability of the other and does not entitle the other to credit for the amount received for covenant, since the consideration is not a satisfaction of the claim for damages and the other tort-feasor would have no cross-action against the one to whom the covenant was given. (*Post, pp.* 429-431.)

Cases cited and approved: Smith v. Amusement Co., 128 Tenn., 112; Dwy v. Conn. Co., 89 Conn., 74; Matheson v. Okane, 211 Mass., 91; Texarkana Telephone Co. v. Pemberton, 86 Ark., 329; Dardanelle, etc., R. Co. v. Brigham, 98 Ark., 169; Yeates v. Ill. Cent. R. Co., 145 Ill. App.; 11; Farmers' Sav. Bank v. Aldrich, 153 Iowa, 144; Louisville Times Co. v. Lancaster, 142 Ky., 122; Musolf v. Duluth Edison Electric Co., 108 Minn., 369; Judd v. Walker, 158 Mo. App., 156; Gaetjens v. New York, 145 App. Div., 640.

9. **EVIDENCE. Parol evidence. Actions between third parties.**
The rule that parol evidence is not admissible to alter or vary a valid written instrument refers only to the parties to the instrument, and does not prevent a tort-feasor from showing by parol evidence that an instrument which was in form a covenant not to sue a joint tort-feasor was in fact a release. (*Post, pp.* 431, 432.)

Cases cited and approved: Myers v. Taylor, 107 Tenn., 364; Matheson v. Okane, 211 Mass., 91.

---

### FROM WILLIAMSON.

---

Appeal from the Circuit Court of Williamson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— DOUGLAS WIKLE, Judge.

P. E. Cox and E. H. & C. P. HATCHER, for appellant.

J. C. EGGLESTON, for defendants.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought to recover damages for injuries sustained by Robert Gregory, a young boy who

came in contact with a wire charged with electricity on the streets of Franklin.

The suit was originally brought against the Nashville Interurban Railway, the Middle Tennessee Railroad Company, and the Cumberland Telephone & Telegraph Company. In pursuance of an agreement hereafter referred to, the suit was dismissed below as to the Cumberland Telephone & Telegraph Company. A verdict was directed in favor of the Middle Tennessee Railroad Company. There was a verdict and judgment for plaintiff against the Nashville Interurban Railway, from which that company prosecuted an appeal in error to the court of civil appeals. The court of civil appeals reversed and dismissed the suit, and the case is before us on petitions for *certiorari* filed both by Gregory and by the Nashville Interurban Railway.

The Interurban Railway Company's lines run into the town of Franklin, and it maintains over the streets in that place a trolley wire and a feed wire, both of which wires are charged with a powerful current of electricity. Over the trolley and feed wires at the point of this accident were strung a number of wires of the Cumberland Telephone & Telegraph Company. Some of the witnesses estimated the number of telephone wires at about fifty.

Proof introduced for the plaintiff below tends to show that a wire of the telephone company broke and fell across the trolley wire or feed wire of the interurban company, and the end of the telephone wire swung

down into the street. The Gregory boy in passing came in contact with the telephone wire highly charged by reason of contact with the trolley wire. and received a severe shock, from which permanent injuries resulted. Neither the feed wire nor the trolley wire of the Interurban Company was insulated. The trolley wire, perhaps, could not have been insulated while in service. Witnesses who examined the telephone wire testified that it was rusted, and apparently broke on account of its weakened condition caused from corrosion.

The declaration described the locality of the accident and the situation of the wires, and set out other details at some length, and then averred that:

"Notwithstanding the imminent danger arising from the situation of said wires, none of said defendants had provided guard wires, shields, or taken any precautions to prevent loose or broken wires from falling, and communicating dangerous and deadly volumes of electric current to the street and sidewalk below. Plaintiff avers that the negligence of defendants in wrongfully, carelessly, recklessly, and negligently erecting their said wires along, across, and over North Margin street, as aforesaid, without providing proper and adequate means of preventing the deadly current of electricity carried by the trolley wire and feed wire of defendant Nashville Interurban Railway from being communicatel to persons using said streets, was the proximate cause of the burns and injuries received," etc.

It will be observed that the plaintiff below charged negligence against the interurban railway in failing

to provide guard wires or shields to prevent the telephone wires from falling and coming in contact with the trolley and feed wires, and also charged said company with failing to take any precautions to prevent loosened or broken wires from falling and coming in contact with the trolley wires.

The court of civil appeals treated the matter as if the plaintiff's case was to be tested by the obligation of the interurban company to interpose guard wires or shields between its trolley and feed wires and the telephone wires above. The court found no evidence tending to show that the use of guard wires or shields, under such circumstances, was the proper and customary mode of construction, and therefore concluded there was no evidence to sustain the case of the plaintiff below.

We think this view is too narrow. We do not mean to be understood as saying it was the duty of the interurban company to place guard wires or shields between its trolley and the telephone wires overhead. In fact the testimony on this record indicates such construction is not now deemed advisable by the best authorities on the subject, but that, on the contrary, the danger to the traveling public is increased in proportion to the number of wires strung above the trolley. It is said that such guard wires or shields themselves are likely to break, and their interposition only augments the hazard of those using the street. A number of courts have taken this view of the subject, and considered that it was not desirable for the company oper-

ating the wire with the deadly current to undertake to shield it with other constructions placed between it and the overhead wires. *Heidt* v. *Southern Telephone, etc., Co.*, 122 Ga., 474, 50 S. E., 361; *Stark* v. *Lancaster Electric, etc., Co.*, 218 Pa., 576, 67 Atl., 909; *Pressley* v. *Bloomington, etc., Co.*, 271 Ill., 622, 111 N. E., 511.

We do not think our case of *Electric Railway Co. et al.* v. *Shelton*, 89 Tenn., 423, 14 S. W., 863, 24 Am. St. Rep., 614, meant to announce as a matter of law that it was the duty of a trolley company to erect guard wires or shields between its wires and the telephone wires overhead. That case was a nonjury case, and the court was disposing of it as a jury on the facts contained in that record and, upon the proof there made, held that such a duty was devolved upon the trolley company.

We think this question may, if the proof warrants, go to the jury to say whether it was negligence to omit the stringing of such guard wires above the trolley wires, and that such is the meaning of *Electric Railway Co.* v. *Shelton*, supra.

As stated above, however, the declaration charged that the defendant company failed to take any precautions to prevent the loose or broken wires overhead from falling and coming into contact with the trolley wire and communicating the dangerous current to the street and sidewalk below.

The rule is well settled in Tennessee that negligence on the part of a trolley company may be inferred from the fact that a guy wire or trolley wire danger-

ously charged with electricity falls on or near a public street. *Chattanooga Electric Railway* v. *Mingle,* 103 Tenn., 667, 56 S. W., 23, 76 Am. St. Rep., 703; *Street Railway Co.* v. *Kartwright,* 110 Tenn., 277, 75 S. W., 719, 100 Am. St. Rep., 807. See, also, *Saulman* v. *Nashville,* 131 Tenn., 427, 175 S. W., 532, L. R. A., 1915E, 316, Ann. Cas., 1916C, 1254.

These cases also declare that a trolley company is charged with the highest or utmost degree of care in the construction, maintenance, and operation of its wires, and that this degree of care must be exercised with reference to supervision of the wires.

This court has also held that the duty of a telephone company and of a trolley company, in so far as the public is concerned, to guard against the falling of a telephone wire across the trolley wire is the same.

"While it was the duty of the one company not to use unsound and unprotected wires, it was equally the duty of the other not to operate its road under such defective machinery."

Referring to the trolley company, the court continued:

"The obligation to see that its road was in good repair, and its machinery in safe operating order, is not confined to the immediate and abstract presence of either, but extends to all surroundings that may depreciate the security of either." *Electric Ry. Co.* v. *Shelton,* supra.

If not therefore the duty of a trolley company to inspect and supervise the construction and main-

tenance of the overhead wires at such points as the latter cross the trolley, it is at least the duty of a trolley company to take steps to have the overhead wires inspected and kept in a safe condition by the company owning and operating them. It is, of course, negligence on the part of a trolley company to maintain its wires charged with a dangerous current over the public highway and underneath other wires known to be defective and insecure. Likewise it is negligence for such a company to rest unmindful of the state of the overhead wires. It must exercise a high degree of care to see that these "surroundings that may depreciate the security" of the public are kept in good repair. For this purpose the law will lend willing aid.

The proof in this case, as heretofore stated, indicates the telephone wire which fell across the trolley was weakened by corrosion, and accordingly parted and fell. Negligence of the telephone company in inspection and supervision may be inferred from this circumstance. So, also, in the absence of a showing by the interurban company of any inspection or supervision of the overhead wires on its own part, or any effort to have said wires inspected or secured, negligence may be ascribed to it.

*Res ipsa loquitur* applies to both companies.

While the interurban company did not have exclusive control of the overhead wires, it did have such control of its own wires. It might have shut off its

current at any time. It was not entitled to employ and convey a deadly current of electricity where, by reason of the surroundings, the public was likely to be endangered, without exercising a high degree of care to have such locality made safe.

This was an accident which would not ordinarily have happened if the interurban company had used the required care to see that all surroundings likely to depreciate the security of its line were in good repair. Such a duty rests upon it in this jurisdiction. *Electric Ry. Co.* v. *Shelton,* supra. Therefore an inference of negligence may be drawn from the circumstances proven. *De Glopper* v. *Railway & Light Co.,* 123 Tenn., 633, 134 S. W., 609, 33 L. R. A. (N. S.), 913; *Memphis Street Railway Co.* v. *Cavell,* 135 Tenn., 463, 187 S. W., 179.

The doctrine of *res ipsa loquitur* was discussed in the late case of *Gill* v. *Brown,* 130 Tenn., 178, 169 S. W., 752, and it was there said that in cases where this maxim was applicable, it was improper to say that the burden of proof was shifted, but an inference was raised that if due care had been employed the casualty would not have happened, and the jury would be warranted in inferring that some negligence had occurred in respect of management or condition.

It therefore follows that the facts proven in relation to this accident, to wit: the fall of the telephone wire across the trolley wire into the street below and the rusted condition of that wire constituted some evi-

dence of negligence at least, both as to the telephone company and as to the interurban company.

The interurban company introduced proof of careful construction and operation of its own lines, but there was no proof introduced by it as to supervision or inspection of the wires of the telephone company strung above its trolley and feed wires at this point. It was incumbent upon the interurban company, in the opinion of the court, to have made some showing of inspection of these overhead wires, or of an effort to have had them inspected by the telephone company. Plaintiff's proof indicates that an inspection would have shown the wire which fell to have been rusted and dangerously worn, and the interurban company could, no doubt, have had this condition remedied. Witnesses offered for the interurban company testify that modern methods of construction demand that the overhead wires be supervised and strengthened, and that this is the best means of protecting the public. Here, however, we have a case in which the overhead wire was obviously defective, and yet this company offers no proof that it had done anything by way of observing the precautions which its experts recommend. .

So we are of opinion that under the facts here appearing, the interurban company has not shown that it discharged the duties imposed upon it by law and met the inference of negligence arising, and the court of civil appeals improperly held this case should have been taken away from the jury.

Although the declaration alleged specific acts of negligence, in the failure to provide guard wires or shields, it also charged negligence generally, in the failure of defendant company to take any precautions to prevent the telephone and trolley wires from coming into contact.

This is not a case like *East Tennessee Coal Co.* v. *Daniel,* 100 Tenn., 65, 42 S. W., 1062, and *Railway* v. *Lindamood,* 111 Tenn., 457, 78 S. W., 99, in which a plaintiff is confined to his recovery on specific acts of negligence alleged. Neither of these were cases into which *res ipsa loquitur* entered.

Where that maxim applies it is not necessary to point out specific acts of negligence in the pleadings. *Turnpike* v. *Yates,* 108 Tenn., 429, 67 S. W., 69. If specific acts are pleaded in such case, we think, under the practice in this state, such pleading is merely surplusage.

Although there is a conflict in the authorities, many well-considered decisions hold that where *res ipsa loquitur* is applicable a plaintiff does not lose the benefit of that presumption by alleging specific acts of negligence which he fails to prove. *Wash. Va. Ry.* v. *Bouknight,* 113 Va., 696, 75 S. E., 1032, Ann. Cas. 1913E, 546; *McNamara* v. *Boston, etc., R. Co.,* 202 Mass., 497, 89 N. E., 131; *Walters* v. *Seattle, etc., R. Co.,* 48 Wash., 233, 93 Pac., 419, 24 L. R. A. (N. S.), 793.

There is quite an extensive note on this subject in 24 L. R. A. (N. S.), 793, where numerous cases are collected.

The court of civil appeals found certain errors in the charge of the trial judge which it thought would compel a reversal in any view of the case. This action of that court is complained of in Gregory's petition for *certiorari*. We think the court of civil appeals correctly ruled on these matters for the reasons stated in the opinion of that court.

The interurban company files a petition for *certiorari* to have this court pass on two questions arising on a covenant not to sue, obtained from Gregory by the Cumberland Telephone & Telegraph Company.

Before the trial below the telephone company paid to the guardian of Robert Gregory the sum of one thousand and five hundred dollars, and took from the guardian a covenant not to sue the telephone company in respect to this accident. It was recited in this paper that the agreement was not entered into or intended as a satisfaction of plaintiff's claim for damages or any part thereof, or as a release of plaintiff's claim or right of action against the Nashville Interurban Railway, or against the Middle Tennessee Railway Company. In form the contract was similar to one discussed in *Smith* v. *Amusement Co.*, 128 Tenn., 112, 157 S. W., 900, which latter document was declared by this court to be a simple covenant not to sue, and not a release.

It is insisted for the interurban company that any recovery obtained against it herein should be credited by the amount plaintiff below received from the tele-

phone company in consideration for the aforesaid covenant not to sue.

The contention of the interurban company is apparently sustained by some cases, notably *Dwy* v. *Conn. Co.*, 89 Conn., 74, 92 Atl., 883, L. R. A., 1915E, 800.

Other cases cited for the interurban company seem to be discussing a release rather than a covenant not to sue.

We think the majority of modern cases take a distinction between a covenant not to sue and a release, and hold that a mere covenant not to sue one tortfeasor does not affect the right to sue the other tortfeasors. This is the conclusion of the author of the note, Ann. Cas., 1913B, 270. *Matheson* v. *Okane*, 211 Mass., 91, 97 N. E., 638, 39 L. R. A. (N. S.), 475, Ann. Cas., 1913B, 267; *Texarkana Telephone Co.* v. *Pemberton*, 86 Ark., 329, 111 S. W., 257; *Dardanelle, etc., R. Co.* v. *Brigham*, 98 Ark., 169, 135 S. W., 869; *Yeates* v. *Ill. Central, etc., R. Co.*, 145 Ill. App., 11, affirmed 241 Ill., 205, 89 N. E., 338; *Farmers' Sav. Bank* v. *Aldrich*, 153 Iowa, 144, 133 N. W., 383; *Louisville Times Co.* v. *Lancaster*, 142 Ky., 122, 133 S. W., 1155; *Musolf* v. *Duluth Edison Electric Co.*, 108 Minn., 369, 122 N. W., 499, 24 L. R. A. (N. S.), 451; *Judd* v. *Walker*, 158 Mo. App., 156, 138 S. W., 655; *Gaetjens* v. *New York*, 145 App. Div., 640, 130 N. Y. Supp., 405.

See also, 34 Cyc., 1043; 34 Cyc., 1090; and notes 58 L. R. A., 293; 19 L. R. A. (N. S.), 618; 24 L. R. A. (N. S.), 451; L. R. A., 1915E, 800; 1 Ann. Cas., 61; 11 Ann. Cas., 397; Ann. Cas., 1913B, 270.

It is difficult to see how a simple covenant not to sue one tort-feasor could affect or reduce the liability of another tort-feasor. It is true that there can be but one satisfaction for an injury, but in the case before us the parties expressly contracted that the sum received was not intended as a satisfaction of plaintiff's claim for damages. A covenant not to sue does not extinguish the cause of action. It is not a defense to a suit on such cause of action. The remedy of the covenantee is to bring his action for breach of covenant, although in some of the cases noted above the covenantee has been allowed to plead the covenant to avoid circuity. Inasmuch as such a covenant can only be pleaded by the covenantee by way of set-off or recoupment and is not a satisfaction of the claim for damages, it is difficult to understand how it could be available at all to another tort-feasor, either to bar the suit against him or to reduce the recovery had against him. He has no semblance of right to a cross-action.

We, therefore, think the trial judge correctly declined to charge those requests which had the effect of instructing the jury to credit the defendant interurban company with the amount received by the plaintiff from the telephone company upon the covenant not to sue.

The interurban company also attacks the action of the trial judge in excluding evidence which it offered, tending to show that the said covenant not to sue was, as a matter of fact, a release of plaintiff's de-

mand against the Cumberland Telephone & Telegraph Company, and was so designed by the parties. The trial judge was of opinion that the nature of this document was defined by its own language, and that parol proof was not admissible to show its real purpose and character. This view was apparently taken by the court of civil appeals, although without any discussion.

We think this was error.

The rule that parol contemporaneous evidence is not admissible to alter or vary the terms of a valid written instrument has reference only to the parties to the instrument. It cannot affect third parties who, if it were otherwise, might be prejudiced by things contained in the writing contrary to the truth, through carelessness, ignorance, or fraud. A third party is not precluded from proving the truth about a document however the truth may vary from the statements contained in said document. *Myers* v. *Taylor*, 107 Tenn., 364, 64 S. W., 719; Greenleaf on Evidence, vol. 1, 279; 17 Cyc., 749; 10 R. C. L., p. 1020.

A like view seems to have been entertained by the court in *Matheson* v. *Okane*, 211 Mass., 91, 97 N. E., 638, 39 L. R. A. (N. S.), 475, Ann. Cas., 1913B, 267.

If the said contract, notwithstanding its provisions, was intended as a release of the telephone company from liability on account of this accident and a satisfaction of the claim of the plaintiff below, the interurban company is entitled to show such facts.

The case is accordingly reversed and remanded for further proceedings in conformity with this opinion.