CHATTANOOGA ELECTRIC RY. CO. *v.* MINGLE.

*(Knoxville.* March 30, 1900.)

1. NEGLIGENCE. *Presumed, when.*

Negligence on the part of an electric street railway company in the selection, construction or supervision of its guy wire, is presumed, without further evidence, from the fact that such wire, dangerously charged with electricity, falls on or near a public street, even though its fall was caused by a stroke from the deranged trolley of a passing car. (*Post, pp. 667–672.*)

2. ELECTRIC STREET RAILWAYS. *Required to exercise high degree of care.*

Electric street railways are required to exercise a high degree of care both in the construction of their lines and in the continued maintenance of the same in a good and safe condition. (*Post, p. 670.*)

Cases cited: 21 Col., 371; 107 Cal., 120.

---

FROM HAMILTON.

---

Appeal in error from the Circuit Court of Hamilton County. FLOYD ESTILL, J.

BROWN & SPURLOCK for Electric Railway Co.

S. B. SMITH, for Mingle.

BEARD, J. The plaintiff in error operates a line or lines of electric railway in the city of

Chattanooga, with overhead trolley wires. The defendant in error, while riding a bicycle with due care, along one of the most used public streets of that city, suddenly found that he was about to run over a fallen guy wire of the electric company, and in endeavoring to avoid it, received a serious injury, to recover damages for which this suit was brought.

The case discloses that an approaching car, in some unexplained way slipped its trolley, which, as it rose, struck this guy wire and broke it. On breaking it fell to the ground immediately in front of the defendant in error. At the time of the accident the wire was carrying at least 500 volts of electricity, an amount perilous to the life or limb of one who came in collision with it.

This being the entire case, upon submitting it in charge to the jury, the trial Judge said that the rule of *res ipsa loquitur* applied, and if they were satisfied the injury to the plaintiff was the proximate result of the fallen wire, then there arose a presumption of negligence on the part of the defendant company, which, unless refuted, would entitle plaintiff to recover.

The trial having resulted in a verdict against the electric company, and its motion for a new trial being overruled, the case is presented to this court on an assignment of error in the foregoing instruction.

We agree with the counsel of plaintiff in er-

ror that the rule is "that those who go on a highway may well be held to do so subject to their taking upon themselves the risk of injury from inevitable danger, where carelessness cannot be charged upon any one."

But was the fall of a dangerously charged guy wire an inevitable danger? That it was unexpected, is no doubt true; but many accidents occur from defective mechanical contrivances which, though not anticipated, are by no means inevitable, because they might have been avoided by the exercise of care corresponding with the danger attendant upon the contrivance. In the case at bar, the guy wire, charged as it was with a heavy electric current, was suspended over a street crowded with persons, passing at all times of the day, was intrinsically dangerous, yet the risk of accident therefrom was not inevitable. If the wire was made of good material and was properly attached above and below, and then carefully supervised, there was no inevitable danger incident to its suspension above the street. If, however, the wire was imperfectly constructed or attached, or, if properly attached in the beginning, it was neglected for a period of time sufficiently long for expansion or strain upon it to weaken the attachments, then it did become a menace to the public, and the company being guilty of the negligence which contributed to this condition, was responsible for the damage proximately resulting

therefrom. Such a wire is used as a brace to strengthen and hold in place the main wire or wires, and is put up not to fall, but to retain its safe level above the street. To accomplish the purpose of its erection, it was required to be heavy and strong enough to stand the force of the strain, as well as that of an ordinary blow. It is common experience that in propelling a car, the trolley will sometimes slip from the wire along which it is passing, and if in so · doing it comes in contact with a guy wire, it is apparent that the latter should be of sufficient strength and fixity to withstand the violence of the sroke, and if it fails to do so, it is not an unreasonable inference that there has been negligence in its selection, construction, or supervision. In view of the extreme peril consequent on the displacement and fall of the wires, and in the operation of an electric railway system, it is essential that a high degree of care be exercised, not only in their construction, but in their continued maintenance in a good and safe condition. *Denver Con. Co.* v. *Simpson,* 21 Colorado, 371; *Girande* v. *Electric Imp. Co.,* 107 California, 120.

If this be not done, then with the growing network of wires suspended over the streets of our towns and cities, those who use these streets in the exercise of a common right, will do so in constant peril.

Under these circumstances, we think no hard-

ship is imposed upon the defendant, who is using this dangerous agency of electricity along overhead wires, when an accident occurs from a wire which has fallen to the street, or dangerously near it, in requiring him to repel a presumption of negligence. Unless the rule of *res ipsa loquitur* is applied, it is evident in a large number of cases, liability for the resulting injury will be escaped. It is within the power of the defendant at all times to show whether he has exercised due care in the selection of material, in their erection and subsequent supervision, while to prove an actionable lack in these things, would be, in most cases, practically beyond the reach of the party injured.

The rule laid down by the trial Judge in this case has been applied frequently. *Kearney* v. *London, etc., R. R. Co.*, L. R., 5 Q. B., 411, was an action to recover for an injury to one who, passing over a brick bridge, was struck by a brick falling from one of its piers. The bridge was three years old, and just before the injury in question, a train had crossed it. In answer to the insistence that before he could recover the plaintiff must show acts of negligence, and that the dislodgment might have resulted from a change of temperature against which no foresight could have guarded, Cockburn, C. J., said:

"It is true that it is possible that from changes in the temperature, a brick might get

into the condition in which this brickwork appears to have been from causes operating so speedily as to prevent the possibility of any diligence and care, applied to such a purpose, intervening in due time so as to prevent any accident. But inasmuch as our own experience of these things is, that bricks do not fall out, when brickwork is kept in a proper state of repair, I think where an accident of this sort happens, the presumption is that it is not the frost of a single night, or of many nights, that would cause such a change in the state of the brickwork, as that a brick would fall out · in this way; and it must be presumed that there was not that inspection and that due care on the part of the defendant which it was their duty to apply."

It seems eminently proper that it should prevail, in view of what has been said, in a case like the · present. In 2 Jaggard on Torts, Sec. 864, the author says that proof of contact with a live wire and of damages resulting therefrom, makes a complete case of *prima facie* negligence against the defendant, and in Crosswell on Electricity, Sec. 249, it is said the mere fact that an electric wire sags or falls, affords sufficient evidence of negligence. And such was the holding in *Uggla* v. *W. E. St. Ry. Co.,* 160 Mass., 354, and *Snyder* v. *Wheeling Electric Co.,* 39 L. R. A., 502 (West Va. Rep., 1897).

We find no error in the record, and the judgment of the lower Court is affirmed.