*MEMPHIS STREET RAILWAY CO. *v.* KARTRIGHT.

(*Jackson.* April Term, 1903.)

1. **STREET RAILROADS.** Negligence presumed from falling of trolley wire.

Negligence on the part of an electric street railway company, in the selection, construction or supervision of its trolley wire, is presumed, without further evidence, from the fact that such wire, dangerously charged with electricity, falls on or near a public street, even if its fall was caused by a slipping of the trolley pole of a passing car, and this presumption of negligence must be overcome by the street railway company. (*Post,* pp. 280-281.)

Case cited and approved: Chattanooga Electric Railway Company v. Mingle, 103 Tenn., 667.

2. **SAME.** Doctrine of res ipsa loquitur applied.

The doctrine of *res ipsa loquitur* applies in case of breakage of the wires of an electric street railway company, so as to require the company to repel the presumption of negligence arising from the mere fact of breakage. (*Post, p.* 282.)

Case cited and approved: Chattanooga Electric Railway Co. v. Mingle, 103 Tenn., 667, 671.

3. **SAME.** Same. Evidence sufficient to support finding of negligence. Case in judgment.

In an action against an electric street railway company for injuries caused by the falling of a trolley wire, though it is not

*As to presumption of negligence from occurrence of accidents, see note to Barnonski v. Nelson (Mich.), 15 L. R. A., 33.

Street Railway Co. v. Kartright.

definitely shown what caused the breakage and fall of said wire, but the plaintiff testified that the trolley pole of an approaching car knocked the wire down and the employees of the company, whose duty it was to make repairs testified in general terms quite emphatically as to the quality of the wire, its condition and frequent inspection.

*Held*: That, in view of the presumption of negligence arising from the manner of the injury, a finding of negligence was sustained by the evidence. (*Post, pp.* 280-281.)

4. **SAME.** **Highest degree of care required in the construction and maintenance of electric wires.**

Electric street railroad companies, in view of the danger attendant upon the breakage and falling of overhead electric wires in the streets and the results to be apprehended to persons in the street, should be held to the highest or utmost degree of care in the construction, maintenance and operation of its lines. (*Post, pp.* 281-287.)

Case cited, approved and distinguished: Chattanooga Electric Ry. Co. v. Mingle, 103 Tenn., 667, 670.

Cases cited and approved: Street Ry. Co. v. Nugent (Md.), 38 Atl., 779; Denver Const. Co. v. Simpson, 21 Colo., 371; Giraudo v. Electric Imp. Co., 107 Cal., 120; Block v. Milwaukee Street Railway Co., 89 Wis., 371; Haynes v. Raleigh Gas Co., 114 N. C., 203; City Electric Railway Co. v. Conery, 61 Ark., 381; Cook v. Wilmington City Electric Co., 9 Houst., 306; McAdam v. Central Railroad Co., 67 Conn., 445.

FROM SHELBY.

---

Street Railway Co. v. Kartright.

---

Appeal in error from the Circuit Court of Shelby County.—J. P. YOUNG, Judge.

WRIGHT, PETERS & WRIGHT, for Street Railway Co.

JERE HORNE and M. C. KETCHUM, for Kartright.

---

MR. JUSTICE WILKES delivered the opinion of the Court.

This is an action for damages for personal injuries. It was tried in the court below by a jury, and there were a verdict and judgment for $250, and the railway company has appealed and assigned errors.

The facts, so far as necessary to be stated, are that plaintiff, a young man, about twenty years of age, was standing on the pavement at the corner of Rayburn and Vance streets, in the city of Memphis. A car of the defendant company was approaching on the street, when the trolley wire, forming part of its overhead construction, with an insulator upon its end, fell, and the insulator struck the plaintiff upon the head, inflicting a wound over his right eye, which left a permanent scar or blemish on his face. He was confined to his bed for several days, and was not able to work for some ten days, and incurred a medical bill of $25. It is not definitely shown what caused the breakage and fall of the trolley wire, but the plaintiff states that the trolley pole knocked the wire down; that he saw it fly off and knock the wire down.

It is assigned as error that there is no evidence to sustain the verdict. This assignment is based upon the theory that there is no definite testimony as to why the wire broke, and no evidence of negligent construction, maintenance, and operation of the line, while there is testimony that the wire was in good condition, and had been inspected two days before; that at the time there was a break in the wire near the same place which was repaired, and the wire was then found to be in proper condition. The rule, as laid down in the case of *Chattanooga Ry. Co.* v. *Mingle,* 103 Tenn., 667, 56 S. W., 23, 76 Am. St. Rep., 703, is that "negligence on the part of the street care company in the selection, construction or supervision of its guy wire is presumed, without further evidence, from the fact that such wire, dangerously charged with electricity, falls on or near a public street, even if its fall was caused by a stroke from the deranged trolley of a passing car." This presumption of negligence must be overcome by the car company. The evidence introduced by the company consisted of the testimony of Bowen, the lineman; Erickson, the foreman of the repair apparatus, called the "Trouble Wagon;" and a negro, Branch, a member of his crew. The testimony of these witnesses is quite contradictory, though they speak, in general terms, quite emphatically as to the quality of the wire, its condition, and frequent inspection. They are more or less interested, as employees whose duties were to make repairs and keep the line in order.

On the other hand, the testimony of the plaintiff furnishes some evidence that the breakage was caused by the slipping of the trolley pole, which is not explained; and the jury, from his statement, might have legitimately inferred that there was negligence in the slipping of the pole, or a defect in the condition of the wire, and, under the rule, this is sufficient testimony, coupled with the presumption, arising out of the breakage, that there was negligence.

The other assignments of error may be treated together, and relate to the degree of care required to be exercised by electric street railways in the construction, maintenance, and operation of its superstructure.

The court charged the jury that the street car company was obligated to use the best material, most approved methods of construction, and the highest degree of care and skill in maintaining and keeping same in repair, considering the dangerous nature of the appliances, and the peril to life and limb embodied in their use. And it is insisted that this was requiring too great a degree of care, and the court was requested to charge that the company was only required to exercise a high degree of care in these respects, and not the highest degree of care.

Counsel cites in support of his contention the language of this court in *Chattanooga Street Railway* v. *Mingle,* 103 Tenn., 667, 56 S. W., 23, 76 Am. St. Rep., 703; *Street Railway* v. *Nugent* (Md.), 38 Atl., 779, 39 L. R. A., 161; Nellis on Street Surface R. R., 288.

The trial judge, in portions of his charge, did state the rule to be a high degree of care, and defined the term, with accuracy, as requiring care commensurate with the perils to be apprehended, and such as would make the appliances safe in their use; but he also, in another part, charged that the highest degree was required. The charge is open to the objection that the rule is not stated in the same or equivalent terms in all portions of the charge, and was, to some extent, confusing to the jury; but we must assume that the jury applied the strict rule of the highest degree of care, in order to constitute error, even upon defendant's contention.

It is true in the case of *Chattanooga R. Co.,* v. *Mingle,* 103 Tenn., 670, 56 S. W., 24, 76 Am. St. Rep., 703, this court said, "In view of the extreme peril consequent upon the displacement and fall of the wires, and in the operation of an electric railway system, it is essential that a high degree of care be exercised, not only in the construction, but in their continued maintenance in a good and safe condition." Citing *Denver Cons. Co.* v. *Simpson,* 21 Colo., 371, 41 Pac., 499, 31 L. R. A., 566; *Giraudo* v. *Electric Imp. Co.,* 107 Cal., 120, 40 Pac., 108, 28 L. R. A., 596, 48 Am. St. Rep., 114.

The real point at issue in the Mingle Case was whether the doctrine of *res ipsa loquitur* applies in case of breakage of the wires, so as to require the company to repel the presumption of negligence arising from the mere fact of breakage; but the court was not attempting to lay down with strict ac-

curacy the full measure of care required of such companies in the construction, maintenance, and operation of their lines.

So the question recurs, was it error to instruct the jury that the highest degree of care must be exercised? In the case of *Denver Cons. Co.* v. *Simpson,* 21 Colo., 371, 41 Pac., 499, 31 L. R. A., 566, it was said by the trial judge: "The defendant was not an insurer of the safety of the plaintiff, but, in constructing its line and in maintaining the same in repair, it was held to the highest degree of care and diligence, and in this respect was bound to the highest degree of care, skill, and diligence in the construction and maintenance of its lines of wires and other appurtenances, and in carrying on its business so as to make the same safe against accidents, so far as such safety can, by the use of such care and diligence, be secured. If it observed such a degree of care, it was not liable. If it failed therein, it was liable for the injuries caused thereby."

On appeal this charge was affirmed, the appellate court saying: "Where all minds concur, as they must in a case like the one we are considering, in regarding the carrying on of a business as fraught with peril to the public, inherent in the nature of the business itself, the court makes no mistake in defining the duty of those conducting it as the exercise of the utmost care. It was therefore not prejudicial error for the court to tell the jury in that case what the law requires of the defendant, viz., the highest degree of care in conducting its business. The

late case of *Block* v. *Milwaukee Street Railway Company*, 89 Wis., 371, 61 N. W., 1101, 27 L. R. A., 365, 46· Am. St. Rep., 849, rightly interpreted, supports this doctrine; and the case of *Haynes* v. *Raleigh Gas Company*, 114 N. C., 203, 19 S. E., 344, 26 L. R. A., 810, 41 Am. St. Rep., 786, expressly lays down the rule as observed by the trial court in the instructions given in this case."

In *Giraudo Case,* supra, the court say: "The public, aside from the consumers using the commodity, owe no duty to those introducing it. But on the other hand, it is the duty of those making a profit from the use of so dangerous an element as electricity to use the utmost care to prevent injury to any class of people composing the public, which consists in considerable members. They must protect those having less than the ordinary knowledge of the character of the commodity."

In *Haynes* v. *Raleigh Gas Company,* supra, the rule is stated thus: "It is due to the citizen that electric companies that are permitted to use for their own purposes the streets of a city or town shall be required to use the utmost degree of care in the construction, inspection, and repair of their wires and poles, to the end that travelers along the highway may not be injured by their appliances. The danger is great, and care and watchfulness must be commensurate with it. All the reasons that support the rigid enforcement of this rigid rule against the carrier of passengers by steam apply with double force to those who are allowed to place

above the streets of a city wires charged with a deadly current of electricity, or liable to become so charged. The requirement does not carry with it too heavy a burden."

In *City Electric Railway Company* v. *Conery*, 61 Ark., 381, 33 S. W., 426, 31 L. R. A., 570, 54 Am. St. Rep., 262, the court uses this language: "Electric companies are bound to use reasonable care in the construction and maintenance of their lines and apparatus— that is, such care as a reasonable man would use under the circumstances—and will be responsible for any conduct falling short of this standard. This care varies with the danger which will be incurred by negligence. In cases where the wires carry a strong and dangerous current of electricity, and the result of negligence might be exposure to death or most serious accidents, the highest degree of care is required. This is especially true of electric railway wires suspended over the streets of populous cities or towns. Here the danger is great, and the care exercised must be commensurate with it. But this duty does not make them insurers against accidents, for they are not responsible for accidents which a reasonable man, in the exercise of the greatest prudence, would not, under the circumstances, have guarded against."

In the case of *Cook* v. *Wilmington City Electric Company*, 9 Houst., 306, 32 Atl., 643, the court say: "The law requires that they [electric light companies] should use every way to protect and save the public from loss

or injury. They must use every means, regardless of expense, to protect and make safe the public, or citizens passing over the streets of the city, who are not aware of danger. They must use due care and ordinary diligence in such case, with the legal meaning in law following and attached to such words as I have stated." As to the meaning of these words, the court say: "The words 'usual and ordinary care' mean, in such cases, nothing more or less than, if there be a great danger and hazard in the business, there should be a corresponding degree of skill and attention required by the law."

"Mr. Keasbey, in his work on Electric Wires, says: "The use of the electric current is authorized by law. It will do no harm if it is kept in its proper place, but it is very dangerous if it is allowed to escape. Those who use it are charged with a public duty to use the greatest care to keep it from doing harm, and, for failure to observe this care, they are responsible to persons using the public streets who may be injured without any fault of their own." Keasbey on Electric Wires, sec. 243. And Mr. Joyce, in his work on Electricity, holds the same view: "An electrical company is under the duty of so maintaining its wires as not to interfere with the free, unobstructed, and safe use of the highway. Although it is not an absolute insurer of its wires, yet it is bound to use the utmost care in maintaining them." Joyce on Electricity, sec. 450. See, also, *McAdam* v. *Central R. Co.,* 67 Conn., 445, 35 Atl., 341.

Street Railway Co. v. Kartright.

We are of the opinion that in view of the danger attendant upon the breaking and falling of overhead electric wires in the streets, and the results to be apprehended to persons in the streets, the company should be held to the highest or utmost degree of care in the construction, maintenance, and operation of its lines; and the court was not in error in so charging. We are of opinion, also, that, taking the whole of his charge together, the jury must have understood the trial judge to lay down the rule of the highest degree of care; and there is therefore no reversible error in the record, and the judgment is affirmed, with costs.