## NASHVILLE RAILWAY & LIGHT CO. v. LILLIAN OWEN.

Middle Section. November 9, 1929.

Petition for Certiorari denied by Supreme Court, March, 15, 1930.

W. E. Norvell, Jr., and E. J. Walsh, both of Nashville, for plaintiff in error, Railway & Light Co.

Keefe & Denney, of Nashville, for defendant in error, Lillian Owen.

CROWNOVER, J. This was an action for damages for personal injuries sustained by Lillian Owen, a passenger, as a result of a

rear end collision between two of defendant's street cars in front of Ward-Belmont College in the City of Nashville. Defendant Railway & Light Co., pleaded the general issue of not guilty. The action was tried by the court and a jury and resulted in a verdict and judgment for $5000 in favor of plaintiff below.

The defendant's motion for a new trial was overruled. It appealed in error to this court and has assigned fifteen errors, which, when summarized, are that the court erred:

(1) In not directing a verdict for defendant as there was no evidence to sustain a verdict.

(2) In instructing the jury that when plaintiff showed that the injury was caused by a collision, the burden of proof shifted to defendant to explain and to show by a preponderance of the evidence that it was not guilty of negligence.

(3) In admitting testimony as to plaintiff's good moral character, and that she was an orphan, and in excluding testimony that she was feigning injury.

(4) In refusing to charge defendant's special requests which were in substance that if the street car slid back on account of a slick track, which condition was unknown to the defendant and could not have been known by the exercise of the highest degree of care, and if the appliances and track were in good condition and its servants were exercising a high degree of care at the time, then there was no liability.

(5) In refusing to charge defendant's special request that if impossible to ascertain with any degree of certainty whether she had a lateral curvature of the spine before the accident, then such condition should not be considered by the jury in assessing damages.

(6) In refusing to grant a new trial on account of prejudicial vituperative statements made by plaintiff's counsel in the closing argument.

(7) The verdict was excessive.

The facts necessary to be stated are that Lillian Owen, twenty-three years of age, was, on November 22, 1927, a passenger on one of the defendant's street cars, returning home from work at 6:30 in the evening. As the car approached the Ward-Belmont College it was stopped on a 6.73 per cent grade, on account of a congestion of street cars and traffic ahead, and the passengers, including plaintiff, were directed to board another of defendant's street cars standing ten feet behind. While the said passengers were taking seats, and Miss Owen had just gone between two seats preparatory to sitting down, the car in front was attempted to be moved forward and the current was applied, the wheels began to spin as the track was wet, and the car rolled back; without warning, and struck the rear car, violently jolting it, and caused Miss Owen to fall against

the seats, as a result of which she sustained injuries to her back, dislocating her spinal column and fractured a rib, which injuries to her back may be permanent, thereby causing much suffering and incapacity to work and to pursue her occupation, and requiring medical attention for seven months at great expense.

The defendant company insisted that the collision was of no consequence, and undertook to show that it was an unavoidable accident, caused by no negligence of the company.

■ We are of the opinion that the first assignment of error, to the effect that the court erred in not directing a verdict for the defendant as there was no evidence to sustain a verdict, is not well made. As above stated, Miss Owen suffered the injuries as a result of a collision of the two cars. It appears that some extra street cars were used on the Belmont line on this afternoon to transport college girls out to Ward-Belmont College, and when the street car on which Miss Owen was traveling reached Ward-Belmont College the division superintendent ordered the car to be returned to the city on account of a congestion of cars ahead, as it was behind the schedule. The conductor ordered all the passengers, including Miss Owens, to leave this car and to take the one immediately in the rear. All the passengers retired to the rear car, and Miss Owen was in the act of walking between the seats when the collision occurred, as a result of which she sustained the injuries.

The two cars were stopped on a grade. It was a wet day and the track was slick. When the current was applied the wheels failed to grip the track and began to spin, and the car rolled back about ten feet and struck the rear car. The brakes were not applied and no sand was placed on the track. The motorman explained that the sand pipes were in front of the wheels and he could not apply sand, but when asked why the other employees had not placed sand on the track at that place he replied that he did not know. No warning of the impending collision was given. No explanation is given why the wheels failed to grip the track and began to spin other than that the track was slick and that the wheels of the street cars did not ordinarily fail to catch. One of the employees testified that the car would probably have stopped within a hundred feet on this grade.

The Street Railway Company insists that the collision was an unavoidable accident and could not reasonably have been foreseen or anticipated by the exercise of the highest degree of care; that such casualties have not been known to occur before and may not reasonably be expected, citing North Memphis Savings Bank v. Union Bridge & Construction Co., 138 Tenn., 161, 192, 196 S. W., 492; 4 R. C. L., 1152, section 587; 1 Thompson on Negligence, sections 28 and 57; and other authorities.

However, we are of the opinion that there are enough facts on this proposition to carry the case to the jury. While common carriers for hire are not insurers of the safety of the passengers they are bound to exercise the highest degree of care consistent with the nature of the business. See Baskin & Cole v. Whitson, 8 Tenn. App., 588; 3 Thompson on Negligence, sec. 2724; Railroad v. Kuhn, 107 Tenn., 106, 131, 64 S. W., 202; Omaha St. R. R. Co. v. Boesen (Neb.), 105 N. W., 303, 4 L. R. A. (N. S.), 129; Railroad v. Messino, 1 Sneed, 220.

"Other authorities, like the court in one instruction in this case, giving still another expression of the same rule of strict accountability, charge passenger carriers with all that 'human foresight' can suggest for the safety of their customers." Railroad v. Kuhn, 107 Tenn., 128; 2 Shearman & Redfield on Negligence (6 Ed.), 495.

"Where a thing which has caused an injury is shown to have been under the management of the defendant, and the accident is such as in the ordinary course of things, does not happen, if those having the management exercise the proper care, the accident itself affords reasonable evidence, in the absence of an explanation, that it arose from want of proper care." De Glopper v. Nashville Ry. & Lt. Co., 123 Tenn., 633, 134 S W., 609; Railroad v. Mingle, 103 Tenn., 667; Transit Co. v. Venable, 105 Tenn., 460; Railway Co. v. Kartright, 110 Tenn., 277; Sheridan v. Foley, 58 N. J. L., 232; Griffin v. Manice, 166 N. Y., 189; Northcross v. Theatre Co., 3 Tenn. App., 57; 2 Jones on Evidence (2 Ed.), 937, sec. 518, 944, sec. 519; Dougherty v. Mo. R. R. Co., 81 Mo., 325, 51 Am. Rep., 239; Mullen v. St. John, 57 N. Y., 568, 569, 15 Am. Rep., 530.

A presumption of negligence arises where the injuries are received as the result of a collision of the cars under the control of the defendant. 10 C. J., 1032, sec. 1430; 36 Cyc., 1504-5; Transit Co. v. Venable, 105 Tenn., 460; 58 S. W., 861; 3 Thompson on Negligence, secs. 2823 and 3504; 8 Thompson on Negligence, Sup., 3484; 5 Am. & Eng. Ency. of Law (2 Ed.), 625; 5 Elliott on Railroads (3 Ed.), secs. 2483 and 2498; 5 R. C. L., 79-80, sec. 715; 2 Shearman & Redfield on Negligence (6 Ed.), 1408-9, sec. 516; Houghton v. Market St. Ry. Co., 1 Cal. App., 572, 82 Pac., 972.

Where a prima-facie case of negligence is made out, it is then incumbent on the defendant, in order to prevent a recovery, to prove that the injury was not due to its negligence, but resulted from an inevitable accident or some cause against which human care and foresight could not have provided. In other words, it is incumbent on the defendant to make a satisfactory explanation. 45 C. J., 1222 to 1225, sec. 784. If the defendant's explanation establishes that it was not guilty of negligence in connection with

the injury, and that the thing does not usually or in the ordinary course produce such result, where due care is exercised by those in charge, the court should direct a verdict, where there is no competent evidence to the contrary. See North Memphis Savings Bank v. Union Bridge & Const. Co., supra.

"The application of the doctrine does not affect the general rule that, where the evidence is so clear and convincing that reasonable minds would not differ in their conclusions therefrom, the question of defendant's negligence is for the court and not for the jury, and hence, if defendant's explanation establishes the absence of culpable negligence so clearly as to leave no substantial conflict in the testimony or issuable fact for the jury to pass on, the presumption will be overcome as a matter of law." 45 C. J., 1224.

While the employees of the defendant testified that such occurrence had not happened before and could not have been foreseen, yet it appears to us that the company should have anticipated from common knowledge that car wheels would slip on a wet, slick track on a grade. And whether its failure to sand the track and to run the rear car at a greater distance behind was negligence, was a question for the jury. Circumstantial evidence on the matter may be sufficient to overcome the positive swearing of witnesses. Sprankle v. Mathis, 4 Hig., 522; 40 Cyc., 2584-5; Toledo, St. L. & W. R. R. v. Star Flouring Mills Co., 146 Fed., 955; Stone & Roofing Co. v. Vaughn, 7 Tenn. App., 177; 1 Jones on Evidence (2 Ed.), sec. 12.

It is hard to understand how these employees knew that it was more effective to apply the current than to apply the brakes when a car began to slip down hill, unless they had had experience with such occurrences before.

The mere explanation that such occurrences did not happen before and that the accident happened from some inexplicable cause, does not rebut the presumption of negligence. 10 C. J., 1037.

■ It is insisted that the court erred in instructing the jury that when the plaintiff showed that the injury was caused by a collision, the burden of proof shifted to the defendant to explain and to show by a preponderance of the evidence that it was not guilty of negligence, is well made and must be sustained.

The court charged the jury on this proposition as follows:

"Where a plea of not guilty is entered, the burden of proof is cast on the plaintiff, and it becomes incumbent upon the plaintiff to make out their case by a preponderance of all the evidence before they are entitled to a recovery.

"There is some shifting in the proof in this case that I will explain to you later on during the progress of this charge.

"I told you back when I started, that in one respect there would be a shifting of the burden of proof. In a case of a passenger, it is incumbent on that passenger to show that there was a collision; but after a collision is shown, then it becomes the duty of a common carrier of passengers to explain and the burden of proof is on them to show that they were not guilty of negligence. If they do that by a preponderance of the proof, even though there has been an accident, there could be no liability.

"On the other hand, if they fail to carry that burden, and there is a passenger who is hurt, that passenger would be entitled to a recovery."

An instruction that upon proof of the accident, the burden of proof shifts to the defendant to establish freedom from negligence by a preponderance of the evidence, is erroneous. Toledo, St. L. & W. R. R. v. Star Flouring Mills Co., 146 Fed., 953; McDowell v. Norfolk Sou. R. R. Co., 186 N. C., 571, 120 S. E., 205, 42 A. L. R., 857 and notes; Sweeney v. Erving, 228 U. S., 233, 57 L. Ed., 815, Ann. Cas. 1914 D, 905 and notes; North Memphis Savings Bank v. Union Bridge & Const. Co., supra; Lewis v. Casenburg, 157 Tenn., 187, 7 S. W. (2d.), 808; Klunk v. Hocking Valley R. R. Co., 74 Ohio St., 125, 77 N. E., 752; Midland Valley R. R. Co. v. Conner, 217 Fed., 956; Omaha St. R. R. Co. v. Boesen, 74 Neb., 764, 4 L. R. A. (N. S.), 122; Scott v. Nauss Bros. Co., 126 N. Y. Supp., 17; Briglio v. Holt & Jeffery, 85 Wash., 155, 147 Pac., 877; Mueller Bros. Art & Mfg. Co. v. Fulton Street Wholesale Market Co., 181 Ill. App., 685; Kay v. Metropolitan St. Ry. Co., 163 N. Y., 447, 57 N. E., 751.

"The general rule is that the doctrine (of res ipsa loquitur) may never become the ground of a directed verdict for plaintiff, but that the weight of the inference as well as the weight of the explanation is for the determination of the jury. Furthermore, in accordance with the general rules pertaining to the province of the court and jury on the issue of negligence, the application of the doctrine does not require or compel the jury to draw the inference of negligence but merely warrants or permits such an inference, which the jury may or may not, in its discretion, draw." 45 C. J., 1223; Gill v. Brown, 130 Tenn., 174, 169 S. W., 752; North Memphis Savings Bank v. Union Bridge & Const. Co., supra; Sweeney v. Erving, supra.

This proposition has been settled in Tennessee, and is ably discussed by Judge Lurton in the case of Toledo, St. L. & W. R. R. v. Star Flouring Mills Co., 146 Fed., 953, which was an action to recover damages for the destruction of a mill and contents by fire

caused by sparks from the railroad company's engine, and was brought under an Ohio statute that made the fact that fire was set to property adjacent to a railroad by sparks escaping from an engine prima facie proof of the railroad's negligence; and it was held that the railroad company was not required in order to overcome such prima facie case to produce a preponderance of the evidence on the question of negligence, but that it was sufficient to produce enough to counter-balance that by which the prima facie case was made out, the ground of recovery under the statute as under the common law being negligence, the burden of proving which rests upon the plaintiff.

Judge Lurton cites and comments on two cases decided by the Ohio Supreme Court, construing this same statute, which reasoning is conclusive on this proposition. One of those cases decided by the Supreme Court of Ohio was the case of Klunk v. Hocking Valley Ry. Co., supra, in which the Supreme Court of Ohio, among other things, said:

"But while the effect of this statute in the cases to which its provisions apply, is to so modify the rules of evidence as to make the proof of such defect prima facie evidence of negligence on the part of the corporation, yet this statute neither changes nor affects the rule as to the quantum or decree of evidence sufficient or necessary to rebut and control the prima facie case thus raised. The general rule would seem to be well established by an almost unbroken line of authority, that to rebut and destroy a mere prima facie case, the party upon whom rests the burden of repelling its effect, need only to produce such amount or degree of proof as will counter-avail the presumption arising therefrom. In other words, it is sufficient if the evidence offered for that purpose counter-balance the evidence by which the prima facie case is made out and established. It need not overbalance or out weigh it. Smith v. Sac. Co., 11 Wall., 139, 20 L. Ed., 102; Stewart v. Lansing, 104 U. S., 505; 26 L. Ed., 866; Foster v. Hall, 12 Pick., 89, 22 Am. Dec., 400; R. R. Co. v. Brazzil, 72 Tex., 233, 10 S. W., 403.

"In the present case the cause of action pleaded and relied upon by plaintiff is grounded solely upon the alleged negligence of the defendant railway company. The general denial in the answer of the railway company puts in issue every allegation of fact in the petition necessary to establish in the plaintiff a right to recover, and the allegation of negligence being the allegation of a material and affirmative fact, the burden, at all times, was upon the plaintiff to establish such fact by a preponderance of the evidence. During the progress of

a trial it often happens that a party gives evidence tending to establish his allegation, sufficient it may be to establish it prima facie, and it is sometimes said that the burden of proof is then shifted. All that is meant by this is, that there is a necessity of evidence to answer the prima facie case or it will prevail; but the burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constituted the issue, and this burden remains throughout the trial. Heineman v. Heard, 62 N. Y. 448. Whether in the case at bar the defendant railway company was guilty of such negligence as would create a liability against it, depended upon the whole of the evidence, as well that which by force of the statute constituted a prima facie case against the defendant, as all the other evidence produced by plaintiff tending to corroborate and, by the railway company, tending to rebut the charge of negligence made against it; and if upon the whole case defendant's negligence was not established by a preponderance of the evidence, or if upon all the evidence adduced upon that issue the case was left in equipoise, the defendant was entitled to a verdict, and the jury should have been so charged. Instead, the jury was instructed by the trial judge that to overcome the presumption or inference of negligence raised against it by the statute, the defendant company 'was required to satisfy you by a preponderance of the evidence that it is not negligent.' This, we think for the reasons above stated, was clearly misleading and erroneous.''

The Supreme Court of Tennessee, in the case of North Memphis Savings Bank v. Union Bridge & Construction Co., supra, in discussing the question of whether the burden of proof shifted to the defendant after a prima facie case was established, expressly followed the rule above stated, in the following language.

''This burden of proof never shifts during the course of a trial, but remains to the end with the party asserting the affirmative of the issue. Here the burden of proof was on the plaintiff to show that defendants were guilty of negligence, and it was not upon defendants to show that they were not guilty of negligence, and this burden of proof did not shift during the trial, but remained with the plaintiff to the end. In some of the text-books and decisions it is said that, by reason of the introduction of rebutting testimony by defendant in the case, the 'burden of proof' is shifted, but all that is meant by this is that there is a necessity of evidence to answer the prima facie case, or it will prevail, but the burden of maintaining the affirmative of the issue involved in the

action is upon the party alleging the fact which constitutes the issue; and this burden remains throughout the trial." Citing Chicago Union Traction Co. v. Mee, 218 Ill., 9, 15, 75 N. E., 800-802.

Our Supreme Court cited approvingly the case of Sweeney v. Erving, supra, decided by the Supreme Court of the United States. The Supreme Court of the United States, in discussing this proposition, said:

"In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff."

Our Supreme Court has again, recently, re-affirmed its position on this proposition in the case of Lewis v. Casenburg, 157 Tenn., 187, quoting from the annotator in the case of Sweeney v. Erving, as follows:

"The reported case affirms what has now come to be the prevailing view with reference to the rule of res ipsa loquitur, viz., that that rule does not relieve the plaintiff of the burden of showing negligence. In cases where the rule is applicable evidence of the occurrence of the injury is evidential of negligence on defendant's part, so as to make it incumbent on him to present his proofs; but it does not make it necessary for him to prove by a preponderance of the evidence that there was an absence of negligence on his part. The burden of proof has not shifted. It still remains with the plaintiff. And if on the whole case the plaintiff has not shown by a preponderance of the evidence that his injuries were caused by the negligence of the defendant he is not entitled to a verdict."

An erroneous application of the rules of evidence cannot be considered as of such trivial importance as not to require a reversal. The evidence must be received and weighed in accordance with the established rules which have been found by time and experience to make for the ascertainment of truth and the maintenance of right, and a clear violation of such rules can never be regarded as of slight importance.

"The rule as to the burden of proof is important and indispensable in the administration of justice. It constitutes a substantial right of the party upon whose adversary the burden rests; and, therefore, it should be carefully guarded and rigidly enforced." McDowell v. Norfolk Sou. R. R. Co., supra.

Chief Justice Marshall, in Queen v. Hepburn, 3 Cranch., 290, 3 L. Ed., 348, said:

"It was very justly observed by a great judge that 'all questions upon the rules of evidence are of vast importance to, all orders and degrees of men: our lives, our liberty, and our property are all concerned in the support of these rules, which have been matured by the wisdom of ages, and are now revered from their antiquity and the good sense in which they are founded.'"

We think the Supreme Court of the State of Washington has laid down the proper rule:

"The jury should be instructed that the burden of proof is upon the plaintiff to establish all the controverted allegations of his complaint by a fair preponderance of the evidence, and defining preponderance of the evidence; that when a situation is shown which necessarily infers negligence on the part of defendant, or res ipsa loquitur, the burden then devolves upon defendant to furnish an explanation or rebuttal of that presumption of negligence, by producing evidence of his due care and proper precaution, under the circumstances and conditions necessarily within defendant's exclusive control. If, then, after considering such explanation, on the whole case and on all the issues as to negligence, injury, and damages, the evidence still preponderates in favor of the plaintiff, plaintiff is entitled to recover; otherwise not." Briglio v. Holt, 85 Wash., 155, 147 Pac., 877; 2 Jones on Evidence (2 Ed.), 942, sec. 518.

It results that this assignment of error must be sustained.

■ It is insisted that the trial court erred in admitting testimony as to plaintiff's good moral character and that she was an orphan, and in excluding the testimony that she was feigning injury.

After an examination of these propositions, we are of the opinion that they are not well made and should be overruled. There was some little proof in the record as to Miss Owen's unreliability and about her "moral duties," sufficient to admit the testimony as to her moral character. We are unable to see where the testimony that she was an orphan affected the verdict. She had been raised by her foster parents and later denied admittance to their home,

and the question of her being an orphan was incidentally raised in showing where she lived; hence, we think there is nothing in this proposition.

We think the court properly excluded the testimony that a witness thought that she was feigning injury. It was shown that he was a lawyer and not a physician, and that he was merely expressing an opinion, which would have been irrelevant. He was permitted to state all the facts that he knew concerning the accident. And we think that there was no error in excluding his opinion that she was feigning injury.

■ ■■ ■ The fourth and fifth assignments, as above enumerated, that the court erred in refusing to charge several special requests, are not well made, for the reason that the special requests were not preserved in the bill of exceptions and there is nothing in the record to show that they were ever made except what is shown in the motion for a new trial.

Where special requests for instructions were not saved in the record except in defendant's motion for a new trial, it is not sufficient to show that such requests were tendered to the trial judge and that he refused to give them, for the motion for a new trial is a mere pleading and is no proof of the truth of the statements. Adamant Stone & Roofing Co. v. Vaughn, 7 Tenn. App., 170.

Recitals of fact in a motion for a new trial are not evidence, because such motion is merely a pleading. Sherman v. State, 125 Tenn., 19; Richmond Type & Electrotype Fdy. Co. v. Carter, 133 Tenn., 493; Assurance Co. v. Feed & Grocery Co., 122 Tenn., 652; Hood v. Grooms, 4 Tenn. App., 515.

The court's charge and special requests must be copied into the bill of exceptions, and they are not properly a part of the record even though they are copied into the record if they are not a part of the bill of exceptions. See Rhoton v. Burton, 2 Tenn. App., 164.

■ It is insisted that the court erred in refusing to grant a new trial on account of the prejudicial vituperative statements made by plaintiff's counsel in the closing argument. One of the statements complained of is as follows:

"Now the last question in this deposition, he has read it dozens and dozens of times, he asked it, I didn't ask it, Mr. Denney didn't ask it, I do not know why he asked it, but I say that is a cowardly question, had nothing to do with this lawsuit, and I say still further, and I believe it with all my heart, gentlemen, it was still more cowardly then, after being asked, he tried to conceal asking it. But counsel have a right to conduct their lawsuits as they may, but whenever I am guilty of as cowardly an attack on the chastity and morality of a pure, sweet, innocent girl, that has been made in this

case, then I hope to God this right hand palsies, and this arm hangs useless at my side, and these fingers lose their power to be used and I go home to my dear sweet wife, a Tennessee woman, born in Tennessee, of generations of Tennesseeans, and I a Massachusetts man, citizen of Tennessee, go home to my children, and kiss them, I hope these lips sear and burn, and I hope the look of innocence in the eyes of my little ones, three of them, shall change to disgust and horror, and I be an outcast as long as I live."

Counsel also repeated several times that there had been "a cowardly attack" upon Miss Owen's character, coupled with vituperative language and statements that the defendant had charged Miss Owen with immoral conduct, made in the face of statements of the defendant that it was not attacking Miss Owen's moral character. It appears that the defendant took the deposition of Mrs. Owen, one of the foster parents of the plaintiff below, in which she proved that Miss Owen had left home and was working out and lived elsewhere. She admitted on cross-examination that she and Miss Owen had several disagreements, some of which had arisen about Miss Owen's "moral duties," and on re-direct examination counsel for the railroad company asked her something about Miss Owen's moral character, and the witness replied that she would rather not discuss her moral character. When this deposition was read to the jury by the Street Railway Company, counsel for that company refused to read that question and answer, but counsel for Miss Owen insisted that it be read. The court stated that the plaintiff could read it and make it her testimony. Thereupon, counsel for plaintiff read the question and answer. This was all the evidence attacking her moral character.

It will be observed that the Street Railway Company did not object at the time to the statements of counsel made in his closing speech to the jury.

Our Supreme Court has reversed cases for such arguments where exceptions were duly made. In the case of Watkins v. State, 140 Tenn., 1, our Supreme Court said:

"Imputations of dishonesty to adversary counsel in remarks addressed to them by the District Attorney touching their conduct of the defense was an impropriety so gross that it must now appear to be such to the official who gave the words utterance. A stern rebuke at the time should have come promptly and voluntarily from the presiding judge, upon whom rested the duty to see that order and decorum marked the procedure in his court. It was error not to sustain objection when interposed. Whether, if it stood alone, it would be reversible error we need not determine."

From this it will be seen that our Supreme Court has held that the trial judge should have rebuked the attorney, even without objection.

The Supreme Court of the United States, in the case of National Surety Company v. George Jarvis, 278 S. W., 610, 73 L. Ed., 536, stated:

"We deem it proper to animadvert upon the bad temper and recklessness of respondent's counsel in making such unsupported statements. We must insist that arguments in this court, either oral or written, though often properly in sharp controversy, shall be gracious and respectful to both the court and opposing counsel, and be in such words as may be properly addressed by one gentleman to another."

The Supreme Court of the United States, in the case of New York Central Ry. Co. v. Edward H. Johnson, 279 S. W., 310, 73 L. Ed., 706, stated:

"In this condition of the record, the repeated statements of counsel that syphilis was the defense, coupled with vituperative language which we have quoted and the statements that the petitioner had charged respondent with indecency, made in the face of testimony of respondent's own witnesses that the disease was frequently transmitted by the use of drinking cups or other innocent means, was not fair comment on the evidence or justified by the record.

"However ill-advised counsel for petitioner was within his rights in following this line of inquiry, and even if it be assumed that the situation was one calling for comment on the evidence so elicited, neither petitioner nor its counsel was on trial for pursuing it. Want of good judgment or good taste, or even misconduct on the part of either was not an issue in' the case for the jury nor could it excuse like conduct on the part of respondent's counsel. . . .

"Respondents urge that the objections were not sufficiently specific to justify a reversal. But a trial in court is never, as respondents in their brief argue this one was, 'purely a private controversy . . . of no importance to the public.' The state, whose interest it is the duty of court and counsel alike to uphold, is concerned that every litigation be fairly and impartially conducted and that verdicts of juries be rendered only on the issues made up by the pleadings and the evidence. The public interest requires that the court of its own motion, as is its power and duty, protect suitors in their right to a verdict uninfluenced by the appeals of counsel to passion or prejudice. See Union P. R. Co. v. Field, 69 C. C. A. 536, 137 Fed. 14, 15; Brown v. Swineford, 44 Wis. 282, 293, 28 Am.

Rep. 582. Where such paramount considerations are involved, the failure of counsel to particularize an exception will not preclude this court from correcting the error. Brasfield v. United States, 272 U. S. 448, 450, 71 L. Ed. 346, 47 Sup. Ct. Rep. 135."

We do not wish to express any views which would restrict counsel in fair argument or comment on the evidence in the trial court. In arguments to juries, counsel must be confined to the record evidence as to the facts, but freedom should be allowed him in making reasonable deductions justified by the evidence, in drawing inferences therefrom, and in making illustrations. He may make personal and temperate comments upon the attitude and motives of the parties and the witnesses. The courts extend considerable indulgence to even extravagant declamation and exaggeration. He may wax eloquent and paint his client's cause in glowing colors and may even shed tears if he is unable to restrain himself, without incurring the penalty of a reversal. But we are of the opinion that the language used by counsel in this case, when he charged adversary counsel with "a cowardly attack on her moral character," as aforesaid, was prejudicial as it was not warranted by any evidence introduced by the defendant or by any conduct of defendant's counsel. Whether, if it stood alone, it would be reversible error, we need not now determine.

■ As the case must be reversed, we express no opinion as to the excessiveness of the verdict.

As some of the assignments have been sustained, it results that the judgment of the lower court must be reversed and the cause remanded to the circuit court of Davidson county for a new trial. The costs of the appeal are judged against defendant in error, Miss Lillian Owen, for which execution may issue, but the costs of the cause will await the final determination of the case.

Faw, P. J., and DeWitt, J., concur.