AUBURN NASHVILLE COMPANY, Plaintiff in Error, v. MARY NELLA GRAHAM, Defendant in Error.

Middle Section. May 23, 1931.

Petition for Certiorari denied by Supreme Court, December 19, 1931.

Hume & Armistead, of Nashville, for plaintiff in error, Company. Bass, Berry & Sims, of Nashville, for defendant in error, Miss Graham.

CROWNOVER, J. This was an action by Miss Graham against the Auburn Nashville Company, Allen Thrailkill and Mr. and Mrs. A. S. Weinbaum, for damages for personal injuries sustained by her in a collision of the automobile in which plaintiff was riding as a guest with an automobile owned by the Auburn Nashville Company which was being driven by Allen Thrailkill, the manager of the Used Car Department of said company. The automobile was registered in the name of Mrs. A. S. Weinbaum. The defendants pleaded not guilty.

The case was tried by the judge and a jury.

At the close of plaintiff's proof, and again at the conclusion of all the evidence, the defendant Auburn Nashville Company moved the court for a directed verdict, which motions were overruled by the court. Verdict was directed in favor of A. S. Weinbaum.

The court, of its own motion, directed the jury to return a verdict against defendant Allen Thrailkill.

The jury returned a verdict for $1500 in favor of the plaintiff and against defendants Auburn Nashville Company and Allen Thrailkill, but found in favor of Mrs. A. S. Weinbaum.

Defendant Auburn Nashville Company's motion for a new trial having been overruled, it has appealed in error to this court and has assigned twelve errors. Defendant Thrailkill did not appeal in error.

Miss Mary Nella Graham, the plaintiff, was a guest in an automobile, a Chevrolet roadster, owned and being driven by Tom Kannady. Miss Graham, Kannady and two other people were out driving, on the night of November 28, 1929, Thanksgiving, at about eight o'clock. They were driving south on the right hand side of Meridian Street, in the City of Nashville, traveling at the rate of about fifteen miles an hour. The Chevrolet roadster had its curtains up. It had only one seat. One of the young ladies was seated in the middle and the plaintiff was sitting in her lap. As they reached the intersection of Meridian and Cleveland Streets, a Willys-Knight sedan owned by the Auburn Nashville Company and driven by its employee, Allen Thrailkill, was traveling east on Cleveland Street at a speed of thirty to forty miles per hour. Thrailkill was driving on his left side of the street, at an angle, going toward the offset section of Cleveland Street. He did not stop at the "Stop Sign" or sound his horn. Kannady swerved his car to the left and put on brakes and stopped. Thrailkill struck Kannady's car about the middle. The force of the blow turned Kannady's car around two and a half times.

Miss Graham was thrown forward into the windshield. Her forehead was cut, over her right eye, to the bone. One knee was hurt. She now has a deep scar beginning at her nose and running up by her eyebrow over to the right side of her right eye.

Another man and his wife were in the car with Thrailkill and his wife. All of the party had been drinking liquor.

1. The first assignment, that there is no evidence to support the verdict, is not well made and must be overruled.

It is contended for defendant that plaintiff has failed to prove that Thrailkill at the time of the accident was engaged in the business of the Auburn Nashville Company. It was admitted that the car was owned by the Company and that Thrailkill was an employee of the Company, but it is insisted that such proof is not sufficient to make out a prima facie case that the employee at the time was acting within the scope of his employment.

Plaintiff's position is that the car was being used under condi-

tions resembling those which normally attended its use in connection with the master's business.

The Auburn Nashville Company was engaged in the business of selling new Auburn automobiles and Cord tires, and all makes of used cars. When it sold a new car it usually took in an old car, which had to be sold. Defendant Allen Thrailkill was manager of the Used Car Department. It was customary to demonstrate used cars to prospective purchasers by taking them out riding in same, and it was a part of Thrailkill's duty to demonstrate such cars. The record does not show what his business hours were, but the testimony of Miss Crowder, an employee of the Company, shows deals were completed at night, or at least the Willys-Knight car was purchased at night. The testimony of Miss Crowder does not show that Thrailkill was permitted to use the cars for his own pleasure. She states that salesmen were "not supposed" to use cars. At the time of the accident Thrailkill had a man and his wife in the car. The fact that it was night would not suggest that he was using the car for his own pleasure instead of demonstrating it. It would be reasonable to make a demonstration at night when a man was away from his work or his business. The fact that they had drunk some whiskey does not affect the situation. A salesman might offer a drink to a prospective purchaser. We think that a prima facie case was made out by the plaintiff by showing that this car was being used as it was normally used in connection with the defendant's business.

"A servant may be presumed prima facie to have been acting in the course of his employment, wherever it appears, not only that his master was owner of the given instrumentality, but also that, at the time when the alleged tort was committed, it was being used under conditions resembling those which normally attended its use in connection with its use in the master's business." Frank v. Wright, 140 Tenn., 535, 205 S. W., 434; Western Union Tel. Co. v. Lamb, 140 Tenn., 107, 203 S. W., 752; Davis v. Newsome Auto Tire & Vulcanizing Co., 141 Tenn., 527, 213 S. W., 914.

"And if the evidence is conflicting on material points, or diverse inferences as to material matters can be drawn from the evidence not conflicting, the question cannot be decided by the court, but must go to the jury." W. U. Tel. Co. v. Lamb, supra.

The jury has decided the case in favor of the plaintiff.

"Another rule of evidence, which is often resorted to to explain incomplete knowledge, is that where the evidence tends to fix liability on the defendant, and if he has it in his power to offer evidence to rebut the unfavorable inferences which the

proof tends to establish, and neglects or refuses to offer such proof, it may be inferred from the facts shown that the fully developed evidence would establish liability on his part." Western Union Tel. Co. v. Lamb, supra.

"In sales of personalty, as in other transactions, an agent has implied authority to do whatever is usual and necessary in such transactions." 22 C. J., 595, sec. 231.

"The presumption is that one known to be an agent is acting within the scope of his authority." 2 C. J., 921, sec. 652.

"The presumption of law is that an agent has done his duty until the contrary appears, as misconduct and negligence will not be presumed in the absence of proof." 2 C. J., 921-2, sec. 656.

It is a felony to take and drive an automobile of another without his consent (Acts of 1921, ch. 17), but no one is presumed to have committed a felony. In the absence of proof there is no presumption of misconduct on the part of individuals or that they have been guilty of committing crime. 22 Am. & Eng. Ency. of Law (2 Ed.), 1280-1; Draper v. State, 4 Baxter, 246.

2. The assignment that the verdict of the jury for $1500 was so excessive as to indicate passion, prejudice or caprice on the part of the jury, is not well made and must be overruled. The jury, after hearing the evidence, assessed her damages at $1500. They saw the scar on her face, and the judge was content to allow the verdict to stand for this amount. Miss Graham was rendered unconscious by the collision, and was found wandering about in the neighborhood, going up the steps to a house and not conscious of what she was doing. She was trembling and crying. A deep gash was cut over her eye so that the skin dropped down over her eye and blinded her sight. It left a permanent scar beginning at her nose, up through her right eyebrow and around to the right side of her eye. The force of the impact threw her against the windshield, and her knee struck the key of the switchboard with such force that it broke the key. Her knee was stiff and pained her for several days. Her right hand was cut. She was carried, in a dazed condition, to the hospital where her wounds were treated, and the wound above her eyebrow was put together with steel clamps. A blood vessel had been severed and had to be tied up. She says the operation was so painful that she could not express it. The clamps were left on the wound for almost one week. She stayed in the hospital one day and was then carried home where she remained for ten days before she was able to resume her work. She was working at a sub-station of the post office and had to employ a substitute until she returned to work. Her knee continued to pain her after the accident, and as a result of the accident she had

a nervous twitching of the eye, and her eye pained her and she had headaches. Her doctors' bills and expenses were less than a hundred dollars. The blow killed the nerve in one of her front teeth. Hence, taking into consideration the nature of her wounds and the injuries she received, we think that the verdict of $1500 was reasonable, and this assignment must be overruled.

3. The third assignment, to the effect that the court erred in charging the jury: ''Under all the evidence I charge you that the defendant, Thrailkill, was guilty of negligence which proximately caused the accident and injury to the plaintiff,'' is not well made and must be overruled.

Thrailkill did not testify in the case, and the only testimony as to how the accident happened was that of Kannady, the driver, and the plaintiff. The uncontradicted proof is that Kannady was driving his car on the right hand side of the street at the rate of fifteen miles per hour; that Thrailkill was driving at a speed of thirty-five to forty miles per hour on the intersecting street, that he was on the left hand side of the street and did not stop for a ''Stop Signal'' and did not blow his horn or make known his approach; that Kannady swerved to the left in an effort to avoid him and had almost stopped his car when the collision occurred; that he struck Kannady's car in the middle between the front and rear wheels, which turned it around two and a half times. There is no proof that Miss Graham was guilty of any contributory negligence. We are of the opinion that Thrailkill's negligence was the proximate cause of the accident and injury, and that the trial judge was correct in directing a verdict against him. Thrailkill did not appeal in error, and there was no error in directing a verdict against him.

4. The fourth assignment is that the court erred in charging the plaintiff's special request as follows:

''I charge you that the proof in this case shows that the car being driven by Thrailkill was owned by the Auburn Nashville Company and that Thrailkill was an employee of the Auburn Nashville Company. Under these facts there is a presumption raised that he was driving the car on the authority or business of the Auburn Nashville Company and the burden then shifted to defendant to exonerate itself if it could. The plaintiff does not have to furnish this full explanation for the defendant; all she is required to do is to establish the ownership of the car and the fact that it was being driven by an employee of the defendant, Auburn Nashville Company, at the time of the accident under circumstances that normally attended its use in connection with the owner's business.''

450

The defendant says that this request is erroneous for two reasons: first, that the court erred in saying that proof of ownership of an automobile and that the chauffeur was the servant of the owner made out a prima facie case that the servant at the time of the accident was acting in the scope of his employment, and second, that the court erred in charging that under this state of facts the burden of proof shifted to defendant to exonerate itself if it could.

The first contention is not well made for the reason that this whole paragraph was given to the jury at the same time, and the latter sentence of the charge explained what the court meant in the first two sentences, and we do not think that the jury was mislead by the statement. The court correctly charged on the proposition in two other paragraphs, and after the court had finished the general charge the defendant offered a request which the court gave in charge to the jury, as follows:

"I charge you that the mere fact that Thrailkill was an employee or agent of the Auburn Nashville Company and the latter owned the car he was driving, creates no liability on the part of the Auburn Nashville Company, unless it is further shown by a preponderance of the evidence that at the time of the accident Thrailkill was on the business of the Auburn Nashville Company and acting in the scope of his employment. If you are of the opinion that Thrailkill was using the car for his own pleasure or business, and not on any business of his employer, your verdict should be for the Auburn Nashville Company."

We are of the opinion that the second contention is not well made, for the reason that the court did not charge the jury that the burden of proof shifted to defendant to exonerate itself. The court stated that if the proof showed the defendant owned the car and that Thrailkill was an employee of the Company, then under these facts there was a presumption raised that he was driving the car on the authority or business of the Company, and under these circumstances "the burden then shifted to defendant to exonerate itself if it could." The quotation is taken from the case of Western Union Telegraph Co. v. Lamb, 140 Tenn., 113, 203 S. W., 752, wherein the court, in that case, in discussing a similar case, stated:

"Nor do we think the duty was upon plaintiff to furnish this full explanation for defendant. Defendant's learned counsel insists that plaintiff should have introduced the superintendent of defendant, or some other witness under defendant's control, and have shown the exact connection defendant had with the accident. We think the plaintiff was under no such duty. When he showed by evidence circumstances from which

reasonable inferences could be drawn establishing the negligence of defendant through its servant and the further fact that the servant was acting within the scope of his employment at the time he committed the act from which the injury resulted, the burden then shifted to defendant to exonerate itself, if it could. These statements are so elementary that citation of authorities is not needed to sustain them, but we believe that the cases cited above fully justify the conclusions drawn.''

It will be observed that the court said ''the burden then shifted to the defendant to exonerate itself if it could.'' The court did not say the burden of proof, and it evidently meant the burden of the evidence or the burden of going forward, as was explained in the case of North Memphis Savings Bank v. Union Bridge & Construction Co., 138 Tenn., 185 to 189, 196 S. W., 492; Nashville Railway & Light Co. v. Owen, 11 Tenn. App., 27-29. In the latter case the trial court charged the jury that ''in a case of a passenger, it is incumbent on that passenger to show that there was a collision; but after a collision is shown, then it becomes the duty of a common carrier of passengers to explain and the burden of proof is on them to show that they were not guilty of negligence.'' There the trial judge specifically charged that the burden of proof shifted, and we held that he was in error, and we fully reviewed the cases on the subject, showing the reason why he was in error, but in the present case the trial court did not tell the jury that the burden of proof shifted. He only stated that the burden, meaning the burden of the evidence, or the burden of going forward, shifted, which was a correct charge as far as it went on that proposition, but was erroneous as to the presumption, which was later corrected, as hereinabove stated. Hence this assignment of error must be overruled.

5. Assignment number five complains that the court erred in charging the following paragraph to the jury:

''Now, if you should find from the preponderance of all the evidence that Thrailkill was a servant and employee of the said Nashville Auburn Company, that at the time of the accident the said car was being used by him under conditions resembling those which normally attended its use in connection with its use in the business of the Auburn Nashville Company, then in that event, you should find in favor of the plaintiff, and against the defendant, Auburn Nashville Company.''

because there was no proof introduced from which inference could be drawn that Thrailkill had authority to or did demonstrate cars at night. The evidence on this proposition has been hereinabove

fully discussed by us and we hold that there is sufficient evidence to warrant the charge, hence this assignment must be overruled.

6. The sixth assignment complains that the court refused defendant's special request:

"Gentlemen of the Jury, where a party calls no witnesses but submits his case in reliance upon the insufficiency of its adversary's evidence, no unfavorable inference arises from his failure to call witnesses who may have special knowledge concerning the facts."

This assignment must be overruled for the reason that the court sufficiently charged the jury on the proposition under the facts of this case, as follows:

"I charge you, gentlemen of the jury, that no unfavorable inference can arise from the failure of the Auburn Nashville Company to call its co-defendant, Allen Thrailkill, as a witness in this case. This is true since he is a defendant in the case, and has a right to testify in his own behalf if he chooses to do so."

It has been held by the Supreme Court that no presumption of fact could arise from the failure of the defendant to testify or to introduce witnesses where the plaintiff failed to make out his case (Railroad v. Finley, 122 Tenn., 127, 118 S. W., 692); but where the evidence tends to fix liability on the defendant, and he has it in his power to offer evidence to rebut the unfavorable inferences, and fails to offer such proof, it may be inferred that the fully developed evidence would establish liability upon his part. Western Union Tel. Co. v. Lamb, supra.

7. Assignment number seven complains of the court's refusal to charge the special request made by the defendant as follows:

"I charge you that, if under a preponderance of the evidence you are of the opinion the defendants, Thrailkill and Mrs. Weinbaum, are liable, that fact alone would not justify you in finding the Auburn Nashville Company liable for it is not mandatory that you find the Auburn-Nashville Company liable if you find its co-defendants liable."

The court's charge was clear with respect to the liability of the separate defendants and this request would have been confusing to the jury rather than helpful to them. The trial judge charged several times that the defendant Company could not be held liable unless Thrailkill was on its business at the time of the collision. This is all that was necessary to indicate the issues to the jury, and this request would have only served to confuse the issues, and this assignment is therefore overruled.

8. The eighth assignment complains of the refusal of the trial judge to charge the special request of the defendant as follows:

"I charge you if you find from a preponderance of the evidence there is liability on the part of the Auburn Nashville Company, you cannot, in assessing the damages, take into consideration whether or not the plaintiff may suffer headaches in the future or have trouble with her eye."

The substance of this request is that the court should have charged the jury that it could not take into consideration the fact that the plaintiff may suffer headaches in the future or have trouble with her eyes. There was evidence to show that the plaintiff was having trouble with her eyes and that she was suffering with frequent headaches. The judge had already charged the jury the following paragraph:

"In fixing this amount you will take into consideration the nature and extent of her injuries. She would be entitled to recover for pain, mental pain, physical pain and anguish as the direct and proximate result of this accident, and in addition thereto for such sums of money expended for hospital bills, medical bills, and medicines, and report such verdict as in your judgment would reasonably compensate her."

We think this was sufficient.

9, 10 & 11. These assignments go to the proposition that the court erred in peremptorily charging the jury that Thrailkill's negligence was the proximate cause of the accident. We have fully discussed this under assignment number three and think there was no error in the court's action, hence these assignments must be overruled.

12. The twelfth assignment complains of the paragraph of the court's charge which is as follows:

"Now, the defendant, Thrailkill, was an employee of the Auburn Nashville Company; that is not disputed. So, the only question for you to determine is was he, at the time of the accident, engaged in his master's business, or in furtherance of its business, at the time of the accident. If the preponderance of all the evidence shows he was, then the defendant, the Auburn Nashville Company, is liable."

The insistence is that in this part of the charge the court again instructed the jury that Thrailkill caused the accident. Having already charged the jury once that Thrailkill's negligence was the proximate cause of the accident, it is clear that the charge complained of is entirely proper, and this assignment must be overruled.

It results that all the assignments of errors are overruled and the judgment of the lower court is affirmed. A judgment will be entered in this court for $1500 together with interest from November 12, 1930, to the present, in favor of defendant in error,

Mary Nella Graham, and against the Auburn Nashville Company. The cost of the cause including the cost of the appeal is adjudged against the Auburn Nashville Company and the sureties on its appeal bond. Executions will be awarded accordingly.

Faw, P. J., and DeWitt, J., concur.